PD-1496-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 6/8/2015 5:39:23 PM
Accepted 6/9/2015 8:48:17 AM
ABEL ACOSTA
CLERK

NO.  PD-1496-14
COA NO. 02-11-00253-CR

## COURT OF CRIMINAL APPEALS
## AUSTIN, TEXAS

## PETITION FOR DISCRETIONARY REVIEW
## FROM THE COURT OF APPEALS
## SECOND JUDICIAL DISTRICT
## FT. WORTH, TEXAS

### CHIEF JUSTICE SHARON KELLER, PRESIDING

**JOE DALE JOHNSON**
*Petitioner*

VS.

**THE STATE OF TEXAS**
*Appellee*

## PETITIONER'S DISCRETIONARY REVIEW BRIEF

Jeff Eaves
State Bar No. 24045820
900 8th St., Ste. 1400
Wichita Falls, Texas 76301
Tel. (940) 322-2002
Fax: (940) 322-1001

Todd Greenwood
State Bar No. 24048111
813 8th St. Ste. 550-K
Wichita Falls, Texas 76301
Tel./Fax: (940) 689-0707

ATTORNEYS FOR PETITIONER

# TABLE OF CONTENTS

**SUBJECT**                                                          **PAGE**

IDENTITY OF PARTIES AND COUNSEL…………………………………………….i

TABLE OF CONTENTS……………………………………………………………..ii

INDEX OF AUTHORITIES…………………………………………………….iv-v

STATEMENT OF THE CASE…………………………………………………….1

STATEMENT OF PROCEDURAL HISTORY………………………………...2

STATEMENT REGARDING ORAL ARGUMENT……………………………...3

GROUND FOR REVIEW……………………………………………………….3

STATEMENT OF FACTS……………………………………………………4

SUMMARY OF THE ARGUMENT………………………………………………8

ARGUMENT………………………………………………………………...12

    I. THIS ISSUE IS ABOUT THE ABUSE NOT THE ADJUDICATION…....14

    II. THE EXCLUDED TESTIMONY WAS RELEVANT BECAUSE THE LOGICAL CONNECTION/NEXUS BETWEEN THE COMPLAINANT'S LONGSTANDING SEXUAL ABUSE OF HIS LITTLE SISTER AND THE ALLEGATION IS MANIFEST…..........................................................18

        A. The state's position as adopted by the *en banc* majority does not address the issue properly before this court……………………………………..19

        B. The complainant's longstanding abuse of his sister was logically connected to the abuse he alleged against petitioner because it showed his motive, means, opportunity and knowledge to fabricate the allegation...21

            1. The prosecution created a false impression by characterizing complainant as a typical, even innocent youth while vilifying

petitioner as a manipulative, devious predator………….……….21

2. It was petitioner's constitutional right to cross examine the complainant regarding the relationship of any mental condition for which he received treatment to his motive to fabricate the allegation…………………………………………………………..23

3. Petitioner was entitled to cross examine the complainant when he put his credibility in issue by contradicting his own prior testimony and that of his father……………………………………….……….25

4. The superficial cross examination permitted into shoplifting, lying, access to pornography and the like did not constitute confrontation sufficient to allow petitioner to develop his defense……….………28

5. Cross examination that was allowed into the complainant's having surfed pornography did not constitute confrontation sufficient to allow petitioner to develop his defense………………………………29

III. THE *EN BANC* HOLDING RELIES ON READING OF THE RECORD WHICH SELECTIVELY IGNORES INCONVENIENT FACTS….......31

IV. THE TRIAL COURT'S WIDE LATITUDE TO DETERMINE CONSTITUTIONALLY-PROTECTED CONFRONTATION DOES NOT INCLUDE DEPRIVING PETITIONER OF A "VIABLE DEFENSIVE THEORY" LET ALONE HIS SOLE DEFENSE AT TRIAL…………………………………………………………….40

CONCLUSION……………………………….……………………………..43

PRAYER FOR RELIEF……………………………………………………..44

CERTIFICATE OF SERVICE……………………………………………….45

CERTIFICATE OF COMPLIANCE………………………………………...45

# INDEX OF AUTHORITIES

**CASES**                                                                       **PAGE**

*Chitwood v. State* 350 S.W.3d 746 (Tex.App.—Amarillo 2011)……………………..........................................................26, 30

*Delaware v. Van Arsdall*, 475 U.S. 673 (1986)………..……….……….……42

*Davis v. Alaska,* 415 U.S. 308 (1974)………..……….…..…………………13

*Hammer v. State*, 296 S.W.3d 555 (Tex. Crim. App. 2009)……...13, 19, 26, 28, 40

*Irby v. State*, 327 S.W.3d 138 (Tex. Crim. App. 2010)………....……...25, 29, 31, 41

*Holmes v. South Carolina*, 547 U.S. 319 (2006)……………………………….29

*Jackson v. State*, 482 S.W. 2d 864 (Tex. Crim. App. 1972)………….....…………26

*Koehler v. State*, 679 S.W. 2d 6 (Tex. Crim. App. 1984)…………………………26

*Pointer v. Texas*, 380 U.S. 400 (1965)…………………………..…………12, 31

*Shelby v. State*, 819 S.W. 2d 544 (Tex. Crim. App. 1991)………..…………..42

*Virts v. State*, 327 S.W.3d 138 (Tex. Crim. App. 2010)………..…………….24


**CONSTITUTIONS, STATUTES, & RULES**                     **PAGE**

Fifth Amendment, United States Constitution………..………………..11, 30, 44

Sixth Amendment, United States Constitution………………………………..11, 44

Fourteenth Amendment, United States Constitution…………….………11, 12, 44

Art. I, §10, Texas Constitution………………………..………………11, 44

Art. I, §19, Texas Constitution…………………………..…………………11, 44

Texas Rule of Evidence 101(c)(West 2013)…………………………………………13

Tex. R. Evid. 404 (b)…………………………...…..….………………11, 44

Tex. R. Evid. 412 (b)(1, 3)(C)……………………...….….…………11,  26, 44

Tex. R. Evid. 608(b)……………………………………………………..11, 13

Tex. R. Evid. 609……………………………………………………...11, 13

Texas Rule of Appellate Procedure Rule 44.2(a)………………………...11, 42

## **APPENDICES**

APPENDIX A, Memorandum Opinion…….…………………………………….A-1

APPENDIX B, *En Banc* Opinion………………………………………………B-1

APPENDIX C, *En Banc* Dissent ………………………………………………C-1

COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS

DISCRETIONARY REVIEW BRIEF ON THE MERITS
FROM THE COURT OF APPEALS
SECOND JUDICIAL DISTRICT
FT. WORTH, TEXAS

JOE DALE JOHNSON
*Petitioner*

VS.

THE STATE OF TEXAS
*Appellee*

## STATEMENT OF THE CASE

Petitioner seeks discretionary review of a 4-3 *en banc* decision of the Second Court of Appeals affirming Petitioner's convictions for Aggravated Sexual Assault which upheld the trial court's ruling that barred cross examination regarding the complainant's longstanding sexual abuse of his little sister.  That abuse and the circumstances attendant to it potentially gave the complainant motive, means, knowledge and opportunity to fabricate his allegation against Petitioner. The State's case at trial relied entirely upon the witness's bare and uncorroborated allegation.  Full and unfettered cross examination into the sexual abuse of complainant's sister was necessary to present Petitioner's sole defense of fabrication at trial.

## STATEMENT OF PROCEDURAL HISTORY

Petitioner was charged with two counts of aggravated sexual assault and one count of Indecency with a Child. Petitioner pleaded not guilty and the case was tried during the week of June 14, 2011.[1] He was subsequently convicted and the jury assessed consecutive life sentences in the Texas Department of Criminal Justice on all three counts.[2] The 89th District Court judge ruled that the sentences were to run consecutively, and the judgments were signed and entered June 16, 2011.[3]

A panel of the Second Court of Appeals issued an opinion on February 14, 2013, reversing and rendering the Indecency with a Child by Contact conviction and reversing and remanding the Aggravated Sexual Assault counts.[4] The State subsequently filed a motion for rehearing *en banc* on February 22, 2013. The panel opinion was subsequently overturned on October 9, 2014 by the court sitting *en banc* on the Aggravated Assault counts in a 4-3 decision of the court, affirming the convictions and life sentences for counts one and two.[5] Count three remained reversed and rendered as the state confessed error. Petitioner seeks review of the decision of the Court of Appeals regarding the *en banc* opinion reversing the panel

---

[1] R.R. 1: 10.
[2] R.R. 10: 40-41.
[3] C.R. 169-177. Appendix A, *Memorandum Op*. at 11-13.
[4] *See* Appendix A, *Memorandum Op*.
[5] *See* Appendix B, *En Banc Op*.

opinion. Appellant's Petition for Discretionary Review was granted on April 22, 2015.

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner believes that the issue presented by the ruling of the appellate court in this matter has profound consequences for all criminal cases based upon accusation alone and consequently where the sole defense may be a full and unfettered cross examination of the complainant. Therefore, oral argument should be granted following full briefing of the issues.

## GROUND FOR REVIEW

The Court of Appeals sitting *en banc* erred in overturning its memorandum panel opinion holding that Appellant was deprived of the fundamental right to a fair trial. Therefore, Due Process was denied when the trial court barred cross examination of the State's complaining witness on the eve of trial given: 1) the State's case against Petitioner was based almost entirely on this witness's outcry and Petitioner's sole defense of fabrication at trial depended entirely upon the Confrontation which was denied and 2) the court's ruling together with the State's case in chief created a false impression of the complaining witness which Petitioner was entitled to correct through cross examination.

# STATEMENT OF FACTS

The complainant in this case was 12 years old when he accused Petitioner of performing fellatio on him and allowing complainant to do the same to him.[6] The complainant testified these acts occurred in Petitioner's home with no one else present and no corroboration.[7] Defendant had been convicted of two counts of Aggravated Sodomy and Indecent Liberties with a child in Sedgwick County, Kansas on August 20, 1980, and December 14, 1982.[8] At the time he made the allegation, the complainant had been sexually abusing his younger sister for a number of years.[9] He continued to sexually abuse his sister after he made this allegation against Petitioner.[10] His parents knew about the abuse of his sister because he told them about it when it occurred.[11] They had arranged counseling specifically for this abuse of their daughter though there was contradictory testimony between complainant and his father, who also testified, as well as within complainant's own testimony.[12]

---

[6] R.R. 7: 11,137-38.

[7] *Id.* at 124.

[8] R.R. 12: 10-15.

[9] *Id.* at 160-61.

[10] *Id.*

[11] *Id.*

[12] *Id*. at 44, 66, 160-62 (complaint ultimately testified outside the presence of the jury that he abused his sister for years to include before and after the allegation against Petitioner and that his parents had sought counseling in 2007 – not 2008 – when he was adjudicated for the sexual abuse of his sister).

The complainant appears to have undergone additional counseling from April 2008, after the State got around to formally adjudicating the complainant for an instance of the longstanding sexual abuse of his sister.[13] The complainant had been put in counseling in 2007 by his parents for other reasons to include repeatedly viewing internet pornography, shoplifting, problems with peers at school and with his family members at home, and depression.[14] He was also upset with his father because he wanted a specific video game his father refused to purchase for him.[15]

Petitioner, a board member at the church and in his fifties, let complainant help him mow lawns when the complainant let it be known within a local church that the complainant was looking for work.[16] As time passed, the complainant accepted more work mowing lawns with Petitioner including Petitioner's own as well as for other church members.[17] The complainant claimed to have accepted cash from Petitioner on several occasions.[18] Petitioner and complainant also went to local hockey games and the movies with Petitioner's nephews as well as to the

---

[13] Defense Exhibits 1-3 reference Defense Ex. 1, "Stipulation of Evidence," COUNT 1: "That on or about April 20, 2008, in Wichita County, Texas, I did then and there intentionally or knowingly cause the penetration of the female sexual organ of Pseudonym 08-041630, a child who was then and there younger than 14 (fourteen) years of age and not my spouse of myself by my finger." (*admitted for record purposes only*).

[14] R.R. 7: 60-62, 65-69, 106, 148-49, 152, 156, 158, 160.

[15] *Id.* at 46.

[16] *Id.* at 28, 84.

[17] *Id*. at 82.

[18] *Id*. at 92, 94.

nephews' home in Walters, Oklahoma, approximately 30 miles distant from Burkburnett where complainant and Petitioner lived.[19]

The complainant walked over to Petitioner's house on at least one occasion.[20] The complainant and the Petitioner apparently confided in one another.[21] This may have included the fact that Petitioner had been convicted of a sexual offense with a teenage boy when he was in his twenties in Kansas or that complainant had been sexually abusing his sister for some time.[22] The complainant's father testified that he was bothered that his son seemed to be spending time with Petitioner given his son had a father figure in his life.[23] In the summer of 2007 he limited his son's contact with Petitioner because he felt they were spending too much time together.[24]

Ultimately, complainant made the allegation which resulted in the charges for which Petitioner now serves three consecutive life sentences.[25] The complainant made the allegation immediately after Petitioner presented the church youth group with a Nintendo DS hand held video game instead of giving it to complainant as a gift.[26]

---

[19] *Id.* at 77-78, 81-82.
[20] *Id.* at 30-31.
[21] *Id.* at 101.
[22] R.R. 9: 23-25; C.R. 42-44, 55-56 (judgment of conviction).
[23] R.R.7: 30.
[24] *Id.*
[25] R.R. 10: 40-41.
[26] R.R. 7: 109, 113.

The complainant approached a youth minister of the church after he learned about the gift of the Nintendo DS, stating he was glad that the handheld game was taken away from the youth group.[27] According to the complainant, the youth minister, unidentified in the record other than as "Jimmy," told complainant, "sounds a lot like something that happened to me."[28] According to complainant and his father, complainant made his allegation to "Jimmy" who then went to the complainant's household later that night to tell the complainant's parents. "Jimmy" was never interviewed by law enforcement and never called at trial.

"Jimmy" reportedly went to the complainant's parents who, in turn, reported the outcry to the Burkburnett Police Department.[29] A forensic child interviewer for Patsy's House, the regional forensic facility which provides interviewers for alleged cases of sexual abuse of children, was not available to interview complainant according to the lead detective, Lahoma Vaughn.[30] Vaughn, a Burkburnett police detective then took on the dual role of lead detective and forensic sexual assault interviewer.[31]

The detective did not interview the initial outcry witness, the church youth minister known as "Jimmy," even though he apparently had conveyed information

---

[27] *Id.* at 114-115.
[28] *Id.*
[29] *Id.* at 117.
[30] R.R. 8: 15.
[31] *Id.* at 8: 65-66.

of his own molestation as a child to complainant.[32]   She did not interview the Petitioner's wife who lived in the home where most of the interaction between complainant and the Petitioner took place and with whom complainant was not getting along.[33]

Neither did she interview complainant's counselor who he saw specifically for the sexual abuse of his sister although complainant had been in counseling for this longstanding sexual molestation for a period of years.[34]   She also did not interview the pastor of the church where the alleged "grooming" had occurred over a period of several months as the pastor, at the time of trial, actually claimed to be unaware of the allegations.[35]

## SUMMARY OF THE ARGUMENT

The twelve-year-old complainant claimed Petitioner sexually assaulted him in Petitioner's home in April 2007 – or maybe in May or June.[36]   He testified this happened with no one else present and with no other corroboration.   The complainant had been sexually abusing his little sister over a period of years prior to the allegation and even as late as April 2008 when he was finally adjudicated by

---

[32] *Id.* at 42.
[33] *Id.* at 44.
[34] *Id.* at 44, 66, 160.
[35] *Id.* at 110.
[36] *Id.* at 83, 89, 122.

8

the State for an instance of this longstanding abuse.[37] He had been repeatedly accessed Internet pornography, shoplifted, had problems with peers at school and with his family members at home, and was depressed.[38] He had been in counseling for some or all of these issues but undoubtedly for the longstanding sexual abuse of his little sister because his parents had arranged this counseling in part for that purpose.[39] He was also upset with his father because he wanted a specific video game his father refused to purchase for him.[40]

One reasonable interpretation of the facts appears to have been that complainant exhibited sociopathic signs and fabricated his accusation and who the State should perhaps have spent more time worrying about than Petitioner. Another reasonable interpretation of facts is that the complainant was a very troubled youth who lied, stole, frequented pornography and sexually abused his little sister and consequently did not get along well with his peers or his family members. Knowing exactly what disgust an accused sexual predator faces, he was able to go from subject of disgust and derision to victim with a single lie.

The trial court's ruling meant the jury could not arrive at either of these reasonable interpretations from the facts because they were deprived of access to those facts which did not favor the State's preferred narrative. The effect of the

---

[37] *Id.* at 149, 160-62.
[38] *Id*. at 60-62, 65-69, 106, 148-49, 152, 156, 158, 160.
[39] *Id.* at 160-61.
[40] *Id.* at 46.

trial court's ruling, however, was even more prejudicial than that. When the jury heard testimony regarding the complainant's lying, stealing, surfing pornography, counseling and problems with his peers or his family members they were left to conclude this was the result of the trauma an innocent youth was experiencing due to the alleged assault by Petitioner.

At trial the State, through its questioning of the panel, opening statements, the testimony of its witnesses and its closing arguments characterized Petitioner as a predator who manipulated the complainant, an ordinary, if emotionally troubled youth. Independent of the trial court's ruling denying confrontation, Petitioner was entitled to rebut this mischaracterization on the basis of the false impression created by the State. Hence, it was the combination of the trial court's ruling; the State's representations, questions and arguments; and the complainant's testimony which prevented Petitioner from developing his sole defense at trial. This compromised the jury's ability to evaluate the evidence and consequently ensured a result in favor of the State.

Were this not enough, the trial court subsequently admitted the testimony of Glenn McCoy regarding Petitioner's 30-plus-year-old convictions from Sedgwick County, Kansas, for sexual assault when Petitioner was in his twenties and McCoy a teen.[41] This conviction was ostensibly admitted for the purpose of rebutting the

---

[41] R.R. 12: 10-15, State's Trial Exhibit 6.

10

very fabrication defense which the trial court had prevented him from developing by its ruling. The product of the fundamentally unfair trial which resulted was three consecutive life sentences.[42]

Evidentiary rules such as Texas Rule of Evidence 608(b) and 609 protect witnesses from having adjudications used against them only where constitutional priorities do not trump. The risk of a contrary standard, such as that urged by the State and the Court of Appeals in its *en banc* opinion risk that the fundamental right of a fair trial may be deprived in cases in which accusation alone is deemed legally sufficient and unprincipled complainants see the opportunity to manipulate law enforcement and courts to their own ends.

Consequently, the trial court inhibited Petitioner from putting on a full defense, thereby depriving Petitioner of the fundamental right of a fair trial ensured by the Fifth and Fourteenth Amendments of the U.S. Constitution and Article I Sections 10 and 19 of the Texas Constitution. The denial of full and vigorous Confrontation ensured by the Sixth Amendment of the U.S. Constitution, Article I Section 10 and 19 of the Texas Constitution and Texas Rules of Evidence 404(B) and 412 rose to the level of a violation of Due Process. It is plain such error cannot be deemed harmless under Rule 44.2(a) of the Texas Rules of Appellate Procedure.

---

[42] C.R. 169-177.

This case would appear to have ramifications that go well beyond the instant facts. The risk of the ruling of the 89th District Court in this case as precedent in the Second Judicial District, threatens the fundamental right of a fair trial in "swearing match" cases. In these cases, an accusation alone is legally sufficient to support a conviction.[43] If prosecutors can use state evidentiary rules meant to avoid the use of juvenile records under the auspices of protecting children or avoid undue prejudice in order to keep facts from juries which demonstrate not only a defense but the sole defense at trial, then Confrontation can be judicially set aside and with it Due Process as it is conceived by the federal and state constitutions.

## ARGUMENT

> "There are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal. Indeed, we have expressly declared that to deprive an accused of the right to cross-examine the witnesses against him is a denial of the Fourteenth Amendment's guarantee of due process of law."

> - *Pointer v. Texas*, 380 U.S. 400, 405 (1965).

It is the law in every courtroom of every jurisdiction of the United States that "[t]he Constitution is offended if the state evidentiary rule would prohibit [the accused] from cross examining a witness concerning *possible* motives, bias and

---

[43] Tex. Code of Crim. Pro. 38.07 (West 2013). As this case illustrates, cross examination as the "crucible of truth" will often be that much more important in such cases. Petitioner's defense was much weaker prior to the complainant's admissions on the stand.

12

prejudice to such an extent that he could not present a vital defensive theory."[44]

Yet, as the court below recognized in its panel opinion just as the *en banc* dissent recognized that this is precisely what the trial court did in this case.

During the briefing of this matter on appeal the State has repeatedly sought to characterize the issue before this Court as narrowly limited to the complainant's 2008 adjudication for an instance of the sexual abuse of his sister.[45] However, the sexual abuse extended over a period of years and occurred both before and after the complainant accused Petitioner of assault.[46]

Just as the 2008 adjudication and any incident giving rise to it was properly subject to cross examination because the constitutional priorities of Confrontation and a fundamentally fair trial trump Texas Rule of Evidence 609,[47] so specific instances of conduct governed by Rule 608(b) which are properly subject to Confrontation when a denial of Confrontation rises to the level of deprivation of the fundamental right of a fair trial and therefore Due Process. The panel opinion appropriately recognized what is manifest in this case after a brief review of the facts: the State's case was the complainant's unsupported, uncorroborated allegation and he had motive, means, opportunity and knowledge regarding sexual matters – specifically as a longstanding sexual abuser – to effectively fabricate an

---

[44] *Hammer v. State*, 296 S.W.3d 555, 561-62 (Tex. Crim. App. 2009)(emphasis added) *citing Davis v. Alaska,* 415 U.S. 308, 316 (1974).

[45] Most recently at page 5 of its Reply to the Petition for Discretionary Review.

[46] R.R. 7: 149, 168; R.R. 8: 44.

[47] Tex. R. Evid. 101(c) (West 2013).

13

allegation because complainant did not receive the Nintendo DS game from Petitioner.[48] That opinion recognized that this case turned on the trial court's pretrial ruling that Petitioner could not cross examine the complainant regarding his adjudication for sexual abuse of his little sister.[49] Additionally, the opinion recognized that Petitioner was independently entitled to rebut the false impression created by the State in its characterization of the complainant as just another innocent youth manipulated by a devious predator.[50]

# I. THIS ISSUE IS ABOUT THE ABUSE NOT THE ADJUDICATION

The significance of the 2008 adjudication for a single instance of sexual assault in April of that year is that the complainant continued to sexually abuse his little sister approximately a year *after* he made his allegation that Petitioner abused him. The State has treated the 2008 adjudication in its Appellee's brief and Reply to the Petition for Discretionary Review as though it were the only abuse, and therefore, the only issue on appeal. The pre-allegation, longstanding sexual abuse of complainant's sister is approached as though it simply did not exist. That approach to the facts was subsequently been taken up by the *en banc* majority, though the opinion does at least acknowledge the complainant's revelations that

---

[48] Appendix A, *Memorandum Op*. at 11-13.
[49] *Id.*
[50] *Id.* at 7-8.

14

resulted from cross examination.[51] At pretrial, the trial court had before it only this juvenile court adjudication.[52] However, the court became fully aware of the scope of the longstanding abuse during the complainant's *voir dire* testimony.[53]

The State did not provide Petitioner information in its possession regarding the complainant's abuse of his sister until this matter was set for trial October 2009.[54] Even then, the only information provided was the 2008 adjudication for a single instance of abuse in April 2008.[55] As it would turn out this was the proverbial tip of the iceberg. At the subsequent pretrial following the continuance, the State moved to bar cross examination into this abuse.[56] In granting the motion the court observed that the 2008 adjudication post-dated the complainant's allegation by approximately a year.[57] Therefore, cross-examination into the complainant's abuse would have been prejudicial, potentially to both sides, given the jury could well conclude that the complainant had been transferring the abuse he suffered to his little sister.

When the complainant took the stand at trial but outside the presence of the jury, counsel for the defense inquired of both the complainant and his father into

---

[51] Appendix B, *En Banc Op*. at 6.
[52] Appendix C at 4; R.R. 4: 7. The trial court later actually heard evidence contradicting this basis for the court's ruling yet did not reconsider that ruling. *See* R.R. 7: 58-63.
[53] R.R., 7: 160-62.
[54] R.R. 2: 14.
[55] In fairness to the State, this may have been the only instance of which the prosecutor was aware at the time.
[56] R.R. 7: 61-62; 160-62.
[57] *Id.* at 160-63.

the complainant's abuse of his sister outside the presence of the jury.[58] Both witnesses told different and contradictory stories which were initially roughly similar in terms of general acts and dates but which broke down during the course of the cross examination.[59]

Ultimately, the complainant admitted that he had been abusing his sister for years before the allegation against Petitioner.[60] He admitted that he had been placed in some form of religious-based counseling for the abuse by his parents.[61] He admitted that while he felt relieved by his allegation against Petitioner he did not really feel bad about what he had done to his sister.[62] Of course, the complainant continued to abuse his sister up to a year after the allegation against petitioner as the 2008 adjudication demonstrates.

This placed the trial court in a very different position than it had been at the time of its pretrial ruling. The court had now heard testimony from the complainant's own mouth that the abuse of his sister had been ongoing, longstanding, and had preceded his allegation against Petitioner by years. This abrogated the court's previous justification for not allowing cross examination into the abuse. The trial court, however, did not reverse course.

---

[58] *Id.* at 7: 58-62.
[59] *Id.* at 61-62, 160-62.
[60] *Id.* at 160-62.
[61] *Id.*
[62] *Id.* (characterizing his guilt for abusing her as "minute").

The court had already heard testimony in the presence of the jury that the complainant had been looking at internet pornography "numerous times," was dealing with social alienation by peers and had problems getting along with his family, was depressed and had emotional problems for which he been in counseling, and had been shoplifting and demanding trendy video games from his father and Petitioner.[63]

Consequently, with the complainant's revelation on *voir dire*, it suddenly became apparent in the courtroom that the jury's rational conclusions regarding the testimony they *had* been allowed to hear took on a very different aspect in light of the knowledge that the complainant had been sexually abusing his sister *for years*. With the knowledge of longstanding, pre-allegation abuse, the jury could and likely would conclude that the Petitioner had the motive, means and opportunity as well as specific knowledge necessary to effectively fabricate an allegation to transform himself from despised abuser to innocent, traumatized victim or in retaliation for Petitioner giving the DS game to the youth group instead of to complainant. Complainant stated that he was "pretty angry" that he did not get the DS game from Petitioner.[64] In the absence of this knowledge of longstanding abuse on the other hand, the complainant appeared to have been an emotionally struggling boy vulnerable to the machinations of a sexual predator, whose

---

[63] R.R. 7: 142, 145, 148-49, 155, 158.
[64] *Id*. at 146.

17

struggles and emotional problems were likely the result of the trauma of Petitioner's sexual assault.[65]

In other words, the ultimate outcome of deliberations came down to the court's willingness to reform its pretrial ruling in light of the new facts before it. The court did not and gave no explanation despite the fact that the rationale for its prior ruling manifestly no longer existed. Remarkably, the court went on to allow testimony regarding Petitioner's 30-plus year old adjudication for sexual abuse of a teenager when he was in his twenties. The court's stated reasoning was that Petitioner had *asserted* fabrication even though he had not been allowed to develop such a defense and had therefore opened the door to rebuttal.

## II. THE EXCLUDED TESTIMONY WAS RELEVANT BECAUSE THE LOGICAL CONNECTION/NEXUS BETWEEN THE COMPLAINANT'S LONGSTANDING SEXUAL ABUSE OF HIS LITTLE SISTER AND THE ALLEGATION IS MANIFEST.

The court below sitting *en banc* deems inquiry into complainant's sexual abuse of his sister as not relevant.[66] Texas Rule of Evidence 401 defines "relevant evidence" as any evidence "having any tendency to make the existence of any fact

---

[65] This longstanding abuse may also have shed light onto the peculiar investigation performed by the Burkburnett Police Department in this case. The lead investigator in that case did not interview the church youth minister to whom the complainant made the initial allegation, she took on for herself the role of forensic interviewer though her experience in this capacity was limited and the standard practice is to refer these matters to Patsy's House, a regional facility that performs these interviews. *Id*. at 8: 42, 56-57, 65-66. Even the complainant's mother and minister of the church were apparently never interviewed. *Id*. at 44, 66, 110, 160.

[66] Appendix B, *En Banc Op*. at 14, note 2.

that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

This case was at its core a "swearing match." These cases turn on credibility because the prosecution's case relies entirely on the testimony of its complaining witness and the defense upon proof of fabrication through cross examination. The jury is the sole arbiter of witness credibility. Consequently, this Court has held that the Texas and federal constitutions mandate "great latitude when the evidence deals with a witness's potential bias, motive or interest to testify in a particular fashion."[67] Similarly, this Court has held that the Rules of Evidence should be used "sparingly to exclude relevant, otherwise admissible evidence that might bear on the credibility of the defendant or complainant."[68]

## A. The State's Position as Adopted by the *En Banc* Majority Does Not Address the Issue Properly before this Court.

The *en banc* opinion regarding counseling and which side "opened a door" is a red herring. It is of no importance which party first brought up counseling. Properly at issue is: (1) the deprivation caused by the trial court's ruling barring inquiry into the complainant's longstanding sexual abuse of his little sister and (2) the State's strategy throughout the course of trial in depicting this case as one

---

[67] *Hammer*, 296 S.W.3d at 561-62 (footnotes omitted).
[68] *Id.*

19

involving a typical, innocent 12-year-old boy manipulated and then victimized by a devious predator camouflaged by his position in a local church.

First, the longstanding abuse and the motive, means, opportunity and knowledge it demonstrates is the issue, not the counseling the complainant received for it and/or for other problems. Counseling has become a distraction on appeal not only because it allows the State to avoid the issues but because it was counseling that the trial court actually allowed the parties to inquire about when it barred cross examination as to the abuse. Counseling is significant only in that it was in the course of questioning about counseling that the complainant made his revelation.[69] From the point of the trial court's ruling barring cross examination the constitutional deprivation requiring reversal was complete. Development of Petitioner's sole defense at trial was barred and therefore admission of the testimony of Glen McCoy regarding Petitioner's 30-plus year old conviction should have been adjudged inadmissible to rebut the fabrication defense.

Both rulings were an affront to the notion of Due Process through fundamental fairness. No mention of counseling need ever have occurred to warrant reversal on this basis and no discussion of false impressions or opened doors need be explored. This matter can and should be resolved on the basis of the

---

[69] R.R. 7: 160-62.

20

trial court's ruling alone to provide clarity to courts dealing with such attempts to scuttle Confrontation in swearing match cases.

The State proceeded at trial by portraying complainant as a typical youth, reluctant to talk about sexual matters, but who had been taken advantage of and manipulated by a devious predator concealed by his role in a local church. This was elaborately and accurately developed in briefing on this issue and addressed in the dissent to the *en banc* opinion.[70]

**B. Complainant's longstanding abuse of his sister was logically connected to the abuse he alleged against Petitioner because it showed his motive, means, opportunity and knowledge to fabricate the allegation.**

The complainant's longstanding sexual abuse of his sister and his allegation against Petitioner manifestly demonstrated a logical connection between the accusation and disgust the complainant faced because it demonstrated he had motive, means and opportunity to fabricate the allegation as well as the specialized knowledge to effectively do so.

**1.** *The prosecution created a false impression by characterizing complainant as a typical, even innocent youth while vilifying Petitioner as a manipulative, devious predator.*

First, contrary to the characterization of the *en banc* majority, the State bears responsibility for the characterization of its complainant as a typical, innocent youth manipulated and assaulted by a devious wolf in sheep's clothing at the

---

[70] Appendix C, *En Banc Dissent*. at 3-6.

21

Church of the Nazarene.[71]  The State's case in chief was the complainant's testimony.  By placing the complainant on the stand and presumably having some idea of the substance of how he would testify, the State shares responsibility for any false impression he might create.

Further, during jury selection, the prosecutor asked panelists about their training or experience dealing with sexual abuse.[72]  The prosecutor asked if a panelists experience confirmed a boy might be reluctant to admit it or to talk about it.  This was clearly creating a false impression because the implication is that the complainant was shy and embarrassed due to his innocence and because the prosecutor knew very well that this witness was anything but an ordinary twelve year old.  Additionally, the State asked a panelist what evidence she might expect to see in a child sexual abuse case. The prosecutor then engaged in a colloquy with the panelist regarding the likelihood of evidence with respect to counseling, impliedly due to a youth having been sexually abused.[73]  This is contrary to the *en banc* majority's characterization in its opinion.[74]

---

[71] Appendix B, *En Banc Op*. at 10.
[72] R.R. 6: 67-68, 74-75
[73] *Id.* at 68-75.
[74] Appendix B, *En Banc Op*. at 10.  The *en banc* opinion goes on to point out that "Johnson's counsel asserted during closing arguments that [the complainant's] 'emotional counseling'" rather than for his sexual abuse of his sister. *Id.*  This is a mischaracterization which ignores the complainant's own admission that he was in counseling for the sexual abuse of his sister and his parents had put him there. R.R. 7: 160-62.  However, even were this so, this would only matter if the appellate court were determining whether there existed an interpretation of facts sufficient to

22

The prosecutor went on to ask multiple panelists about how children might be likely to act "after they have been victimized."[75] The prosecutor then went into intra-familial sexual abuse, issues of a child's credibility, and the effect of abuse on a child.[76] Therefore, counseling had been raised as an issue by the State and a false characterization of the complainant and Petitioner made by the State as early as *voir dire*. Furthermore, complainant testified that he had been watching pornography "numerous times" from the age of ten.[77] According to complainant's father, the family lived in Delaware at that time, before complainant ever met Petitioner.[78]

In opening the prosecutor asked the jury to "do [their] best to look at this through the lens of a 12, 13-year-old boy" and through the eyes of a fifty-year-old deviant pervert.[79] He characterized Petitioner as "cunning and opportunistic" and as "deceitful."[80] The prosecutor argued in closing in a similar vein.[81] Hence, the State independently 'opened any doors' that could possibly have been opened. From that point the Defense was entitled to inquire into the abuse of the complainant's little sister in order to rebut the false impression created by the State.

---

support a verdict. Here, the analysis is whether the trial court was justified in keeping one side of the facts from the fact finder.

[75] R.R. 6: 73.

[76] *Id*. at 48-51.

[77] R.R. 7: 128.

[78] R.R. 7: 45.

[79] *Id*. at 16-17.

[80] *Id.*

[81] Appendix B, *En Banc Op*. at 11.

**2. *It was Petitioner's constitutional right to cross examine the complainant regarding the relationship of any mental condition for which he received treatment to his motive to fabricate the allegation.***

Second, the *en banc* majority reasons that because Petitioner was able to ask about the complainants' theft, pornography exposure, poor relations with peers and family, that he wanted video games from his father and that he was in counseling for 'emotional problems,' Petitioner had an adequate opportunity to show Petitioner's mental health.[82] This ignores the purpose of allowing inquiry into the mental health of a complainant articulated in *Virts v. State*.[83]

In that case, this Court held that the details of the condition and treatment for which a complainant was subject to treatment were subject to cross examination because those details and condition could demonstrate a motive to fabricate.[84] Allowing superficial cross examination which merely shows that the complainant had some sort of 'emotional problems' and was in counseling for "just dealing with stuff"' and "everyday teenager stuff" and "he was depressed somewhat," and 'the usual teenage stuff' cannot be said to constitute cross examination into any condition and treatment which might provide an a motive to fabricate.[85]

---

[82] *Id*. at 11-12

[83] 739 S.W.2d 25, 30 (Tex. Crim. App. 1987).

[84] *Id.* at 28.

[85] R.R. 7: 61.

Further, the *en banc* majority ignores that the complainant got on the stand in *voir dire* and rebutted these very characterizations for his counseling, stating that he was in counseling for repeatedly sexually abusing his little sister over a period of years prior to the allegation and that his parents put him there for that reason.[86]

**3.** *Petitioner was entitled to cross examine the complainant when he put his credibility in issue by contradicting his own prior testimony and that of his father.*

Third, the *en banc* majority next focused narrowly on the complainant's statements that his allegation against Petitioner was a "weight off his shoulders" but he felt "minute guilt" at years-long sexual abuse of his sister.[87] The majority stated that "the connection between his relief after telling someone about Petitioner and his guilt about this sister is tenuous at best."[88] This recharacterizes the issue of logical connection/nexus articulated in *Irby v. State* by placing it on the relationship between these two inconsistent statements rather than on the relationship of the years-long abuse of complainant's sister to his allegation.[89]

Petitioner was entitled to cross examine the complainant when he made two logically inconsistent statements, *one in front of the jury and one outside their presence* because this put his credibility in issue. "The proper scope of cross-examination includes 'all facts and circumstances which, when tested by human

---

[86] R.R. 7: 160-62.
[87] Appendix B, *En Banc Op*. at 12.
[88] *Id.*
[89] 327 S.W.3d 138, 145-54 (Tex. Crim. App. 2010).

25

experience, tend to show that a witness may shade his testimony *for the purpose of helping to establish one side of the cause only.*"[90] Feeling relief by accusing someone is clearly not consistent with "not" feeling guilty by hurting someone. This put the complainant's credibility in issue.

The lower court cites *Chitwood v. State*, for support.[91] That case involved an Appellant's attempt to show that two complainants who had alleged sex acts against him had had sex with another adult male on another occasion though one disputed the incident.[92] There was nothing more. The court concluded Appellant merely sought to attack the complainants' general credibility and that therefore the cross examination could be irrelevant, embarrassing and potentially traumatizing.[93]

Hence, this line of cross examination was barred due to the utter absence of any articulable motive constituting a "viable defensive theory" within the meaning of Texas Rule of Evidence 412(b)(3) present under the facts of that case.[94] Here, the totality of facts clearly suggest motive, means, opportunity and knowledge. The complainant was sexually abusing his sister for years before the allegation and up to a year after.[95] At the very least his parents and sister have to have known

---

[90] *Koehler v. State*, 679 S.W. 2d 6, 9 (Tex. Crim. App. 1984) *citing Jackson v. State*, 482 S.W. 2d 864, 868 (Tex. Crim. App. 1972) (emphasis added).
[91] Appendix B, *En Banc Op*. at 12 *citing* 350 S.W.3d 746, 748 (Tex.App.—Amarillo 2011, no pet.).
[92] *Id.* at 47.
[93] *Chitwood*, 350 S.W.3d at 748-49.
[94] *Id*. at 748, *citing Hammer v. State*, 296 S.W.3d 555 (Tex. Crim. App. 2009).
[95] R.R. 7: 149, 162-63.

about it and he testified they did.[96] He did not get along with his mother and was not on speaking terms with her, was distant from his father, and (presumably) his sister.[97]

He was having trouble with peers at school.[98] His father characterized this as "bullying" though it seems obvious that there can be sound reasons your peers just do not like you very much.[99] He had been caught shoplifting video games he had been demanding from his father and Petitioner.[100] He and Petitioner had confided in one another.[101] He was in counseling for the years-long sexual assault of his sister which his parents had arranged for him at least in part for this reason.[102] He may or may not have been under investigation with the Burkburnett Police Department or cooperating with them, though either might explain the peculiar manner in which the investigation was handled.

An allegation of sexual assault timed as it was could have transformed the complainant from despised, sociopath and incestuous predator to pitied victim whose struggles were the result of Petitioner's heinous assault. It could have transformed him from suspect to cooperating informant. It is difficult to conceive

---

[96] *Id.*
[97] *Id.* at 60, 106, 148.
[98] *Id.* at 61.
[99] *Id.* at 59, 61-62, 65.
[100] *Id.* at 58-59.
[101] *Id.* at 118.
[102] *Id.* at 160-63.

a set of facts that suggest a more viable defensive theory within the meaning of *Hammer v. State* than those present here in regards to swearing match cases.

Again, the *en banc* majority depends upon an inaccurate version of the facts to justify its conclusion that complainant's testimony presents no motive to fabricate. That is, that the only instance of abuse was the 2008 adjudication which occurred after complainant's allegation.[103] This utterly ignores the complainant's own testimony.[104] Essentially, the *en banc* majority picks and chooses among the facts in order to determine what it, as fact finder, elects to believe.

### 4. *The superficial cross examination permitted into shoplifting, lying, access to pornography and the like did not constitute Confrontation sufficient to allow Petitioner to develop a complete defense.*

Fourth, the *en banc* majority reasons that because the cross examination that was allowed as to the "being somewhat depressed," theft, problems socializing, and the like ("a glut of evidence"), Petitioner had adequate opportunity to show the complainant had motive to "get attention" in order to "get himself out of trouble in the eyes of his parents."[105] Limiting Petitioner's defense in this manner effectively eviscerated Petitioner's core defense of fabrication leaving Petitioner to present what the court would allow. The United States Supreme court ruled in *Holmes v. South Carolina* that the Sixth Amendment guarantees defendants the right to

---

[103] Appendix B, *En Banc Op*. at 6.
[104] R.R. 7: 160-62.
[105] Appendix B, *En Banc Op*. at 12.

present a complete defense.[106] With such an incomplete defense, Petitioner was left with hoping the jury would connect the dots and conclude there was something more going on with this complainant.

Of course, parents might understandably be distracted from whatever recent poor behavior a child has engaged in that the child claims to have been sexually assaulted. That motive would seem to be potentially present in every case. However, it is not in every case that the complainant has clear motive to redirect what the totality of the facts suggest is considerable disgust which transformed the complainant's life or where he had considerable motive to redirect immediate scrutiny *given he would continue to sexually abuse his sister*.[107]

The majority additionally argues that there is no logical connection or nexus between an allegation and motive to fabricate just because it can be suggested it would distract attention from a complainant's other acts or because it would focus attention on the complainant as cherished child rather than the child's bad behavior. The opinion invokes the *Irby* logical connection requirement for this proposition.[108] However, this characterization again ignores the facts of this case and supplants them with those of another case involving an attempt merely to engage in a mud-slinging expedition involving a witness' "general credibility."

---

[106] *Holmes v. South Carolina*, 547 US 319, 324 (2006).
[107] R.R. 7: 149, 160-62.
[108] Appendix B, *En Banc Op*. at 13.

29

**5.** *Cross examination that was allowed into the complainant's having surfed pornography did not constitute Confrontation sufficient to allow Petitioner to develop his defense.*

Fifth, the *en banc* majority argued that because Petitioner was able to ask about the complainant's having accessed Internet pornography, he had adequate opportunity to show the complainant's knowledge of sexual matters in order to effectively fabricate an allegation.[109] Again, the majority recharacterizes this case as a *Chitwood*-like attack on general credibility while utterly ignoring the facts.

Having oneself sexually abused a victim *for years* and been subject to the scorn and opprobrium that accompanies such conduct is distinct from doing what virtually every 12-year-old boy who can get online is apt to do at some point. These two things are distinct. Being a sexual abuser provides knowledge and therefore means to effectively fabricate an allegation. To deem otherwise is contrary to common sense and supplants the role of the jury. As a direct consequence, the trial court's ruling barring Confrontation was superseded by the constitutional priority of the fundamental right to a fair trial from the point the complainant admitted to the longstanding, pre-allegation abuse of his sister. This Court has recognized independent bases over time under which Confrontation is required in swearing match cases. It is a testament to the dramatic deprivation of Due Process in this case that several of these bases are squarely implicated in this

---

[109] *Id.*

30

case. Conversely, if the State is correct, then counsel for Petitioner was bound to sit mute and these swearing match cases going forward are reduced to merely the appearance of trial on the merits. In Texas, we will then have the portrayal of Due Process but not the actuality. That is what a deprivation of Confrontation does to everything a trial is about, as this Court recognized in *Pointer*.[110]

## III. THE *EN BANC* HOLDING RELIES ON READING OF THE RECORD WHICH SELECTIVELY IGNORES INCONVENIENT FACTS.

Although the *En Banc* majority at least acknowledges that the complainant testified he had been sexually abusing his sister for years before his allegation against Petitioner, it ignores this testimony in arriving at its holding. Again, *Irby* only governs the 2008 adjudication which demonstrates the complainant's motive, means, opportunity and knowledge to fabricate. This appeal is not narrowly about the complainant's 2008 adjudication for sexual abuse of his little sister. It is complainant's longstanding sexual abuse of his little sister, which occurred both for years before his allegation and for at least approximately a year afterwards, which is at issue. Obviously, the July 2008 incident which finally produced an adjudication is *afterward*.[111] In his own words, the complainant had been sexually abusing his sister *for years* by 2007 when he made the allegation of abuse by

---

[110] *Pointer*, 380 U.S. at 405.

[111] The assault occurred in the April to June 2007 time frame. This is reflected in the indictment and was the complainant's and father's own testimony although counsel for Petitioner at trial did erroneously say "November 2007" several times during cross examination. R.R. 7: 83, 89, 122.

Petitioner.[112]  The State and *en banc* majority consistently cite to the complainant's testimony earlier in the record together with his father's to the effect that this abuse was more limited in scope, ignoring the complainant's later testimony on cross examination outside the presence of the jury.[113]

In a similar vein, the opinion inaccurately references the State's Brief and Reply by stating complainant's counseling in fall 2007 "was based solely due to his relationship with his parents."[114]  Again, the complainant testified outside the presence of the jury repeatedly that this counseling was for sexual abuse of his sister and that his parents had arranged it for that purpose.[115]

The complainant made clear that he was in counseling for sexual abuse of his sister before he made his allegation against Petitioner in 2007.[116]  Again, there was previous contradictory testimony on this from the complainant's father.[117]  It seems clear from the adjudication of the April 2008 abuse that the complainant was still molesting his sister up to a year after that allegation was made.

The danger of this practice of choosing only the most convenient facts to support one's position is that, from a hurried, skin-deep reading of the record, it actually gives the appearance that complainant's abuse of his sister occurred after

---

[112] R.R. 7: 160-62
[113] R.R. 61-62, 160-62.
[114] Appendix B, *En Banc Op*. at 10.
[115] R.R. 7: 162.
[116] *Id.*
[117] *Id.* at 61-62

the alleged assault by Petitioner and so makes the complainant appear to have been perverted into the status of a sexual abuser by his exposure to Petitioner.

Just to ensure that a complete reading of the record is the basis for this honorable Court's determination, the relevant portion of the complainant's own testimony from Volume Seven, pages 160-162 [emphasis added] follows:

> "[Petitioner]: You said that you felt -- and I don't know what your words were, but you felt like you were relieved after you told all of this [the allegation against Petitioner] to Jimmy and the authorities ties, correct?
>
> "[Complainant]: Yes.
>
> "[Petitioner]: **You had been sexually abusing your sister for a number of years, had you not?**
>
> "[Complainant]: Yes
>
> "[Petitioner]: Did you tell them every time that you did that?
>
> "[Complainant]: Who?
>
> "[Petitioner]: You parents?
>
> "[Complainant]: **Yes.  They knew.**
>
> "[Petitioner]: Every time?
>
> "[Complainant]: **Yes.  I went through treatment so they had to know.**

33

"[Petitioner]:      Well, I'm talking about in the fall of
                   2007.[118]

"[Complainant]: Back then?  No they did not know.

"[Petitioner]:      Okay.  And did you have -- I'm trying to
                   -- did you feel guilt over that?

"[Complainant]: Yes.

"[Petitioner]:      In the fall of 2007?

"[Complainant]: Minute guilt, yes.

"[Petitioner]:      Minute guilt?

"[Complainant]: Yes.

"[Petitioner]:      I'm trying to figure out how you will
                   feel this emotion is lifted off you
                   when  somebody allegedly did some
                   thing to you, but you feel minute guilt
                   over your sister?

"[Complainant]: Was that a question?

"[Petitioner]:      Yes.

"[Complainant]: I don't know.

"[Petitioner]:      Okay.  You -- you're not a sex addicts,
                   whether it be through watching
                   pornography or abusing your sister or
                   what you claim to have happened
                   with Joe, they didn't make you feel
                   guilt at all, did they?

---

[118] Counsel for Petitioner mistakenly refers to the date of the alleged assault as fall or November 2007.  It is undisputed that the alleged assault took place in the April to June 2007 time frame. *See supra* n. 35.  The date of indictment lists April 10, 2007. *See* C.R. 2.

"[Complainant]: Yes, they did.

"[Petitioner]: You didn't feel guilty with what you did with Joe, did you? What you claim you did with Joe?

"[Complainant]: Yes, I did.

"[Petitioner]: Alright, and after you released this information and were relieved and felt better about it, **you continued to abuse your sister, correct?**

"[Complainant]: **It wasn't the end, but they put -- my parents put me in counseling for that reason. That's why I was in counseling at the Christ Care thing.**

"[Petitioner]: In the -- in the Fall of 2007?

"[Complainant]: **Yes, that's why I was in counseling.**

"[Petitioner]: **And that's one of the things you were struggling with in November of 2007?**

"[Complainant]: Yes.

"[Petitioner]: **And that was contributing to your emotional difficulties?**

"[Complainant]: A little bit, yes.

"[Petitioner]: I'll pass the witness your honor.


"REDIRECT EXAMINATION

35

"[Prosecutor]:      Heath, I want to – I want to clear up any confusion. Are you saying that you were struggling with the sexual abuse with Joe during November 2007 or what **was happening** at home with your sister.

"[Complainant]:   Both

"[Prosecutor]:      When you started counseling, your parents didn't know about the sexual abuse with your sister or Joe, did they?

"[Complainant]:   They did not know about the sexual abuse with Joe, but they knew about the sexual abuse of my sister. They had guessed what was happening and they wanted it to stop.

"[Prosecutor]:      Okay.

"[Complainant]:   And they were trying to find out through the counselor if I had or not."

The complainant also testified to the other problems he was having and for which he was in counseling well before any allegation against Petitioner.[119] The complainant's father had already testified outside the presence of the jury that the complainant had been in counseling at Christ Home Place Ministries (CHPM) in May 2007 for issues which did not include the complainant's sexual abuse of his little sister which, in his own words, would have been already years longstanding at any point in the year 2007:

---

[119] *Id*. at 156-60.

"Petitioner:   Now, was your son undergoing any type of **counseling or therapy in the fall of 2007?**

"Witness:   Yes.

"Petitioner:   Where at?

"Witness:   Christ Home Place

"Petitioner:   And what was it for?

"Witness:   Just dealing with things.

"Petitioner:   What things?

"Witness:   School.  I believe he was depressed somewhat.

"Petitioner:   What else?

"Witness:   And the – I believe the pornography thing came – thing came up.

"Petitioner:   **Okay.  Was he being treated because of sexual abuse to his sister?**

"Witness:   **No.**

"Petitioner:   What was he depressed about?

"Witness:   I have no idea, just everyday teenager stuff, I guess.

"Petitioner:   What problems was he dealing with at school that he had to go to Christ Home Place Ministries?

37

"Witness: Kids were bullying him. They would – I know on one instance, some kid came up behind him and ripped his new hoodie.

"Petitioner: Okay. Would it be fair to say that his emotional state in November 2007 was not good?

"Witness: He was probably dealing – he was dealing with some stuff.

"Petitioner: Okay. Would you – so his – he was depressed, he was having relationship problems with his mother, he was getting counseling, he was being bullied at school. You would agree with me, he – he was having emotional problems in November 2007 when he made this outcry?

"Witness: I guess that would be plausible to say.

"Petitioner: **In November – in the fall of 2007, had you caught him having any kind of sexual contact with his sister?**

"Witness: **When?**

"Petitioner: **The fall of 2007.**

"Witness: **No. I'm sorry, let me take that back. No. It was not May – not fall of 2007."**[120]

The complainant's father goes on to testify that he could not remember when he and his wife placed their son in CHPM counseling, how long he had been in

---

[120] It seems possible that the mistaken reference to November may account for the complainant's father's denial that his son was in fact in counseling for sexually abusing his sister at the time of the allegation, as the complainant testified. There were at least two forms of counseling and all this had happened some five years' prior.

treatment there, or if it preceded April 2007, the earliest possible point at which the complainant testified the alleged assault could have occurred.[121]   The complainant had testified he could not remember when the assault occurred and that it could have been in April, May or June 2007, the time frame when the complainant and State place the assault.[122]

It is undisputed that court-ordered counseling likely also occurred in 2008 after the State adjudicated an instance of the sexual abuse of complainant's little sister that had already been going on for years by the time of the allegation.  There can be no question after a reading of the testimony which was kept from the jury that the complainant's sexual abuse of his little sister was occurring well before his allegation of assault by Petitioner.  Petitioner was having a number of problems to include his lying, use of pornography and the fact that he did not get along with his peers and family members.

These problems may well be the symptoms of a young sociopath dealing with the opprobrium directed at a sexual predator or even the result of sexual abuse tolerated within the family or even passed down.  It may suggest motivations stemming from a number of things other than sexual assault by Petitioner.  It can never be known because Confrontation was denied, leaving the State free to

---

[121] *Id*. at 66.
[122] *Id*. at 89, 122-24.

39

characterize the complainant as just another youth victimized by a pervert. At the very least we know that the complainant was troubled prior to ever meeting Petitioner. It is clear that by 2007 the complainant had motive, means and opportunity to relieve himself of the opprobrium he was experiencing for sexually abusing his sister and the knowledge to fabricate and allegation effectively so as to portray himself as a victim, rather than a predator.

## IV.  THE TRIAL COURT'S WIDE LATITUDE TO DETERMINE CONSTITUTIONALLY PROTECTED CONFRONTATION DOES NOT INCLUDE DEPRIVING PETITIONER OF A "VIABLE DEFENSIVE THEORY" LET ALONE HIS SOLE DEFENSE AT TRIAL.

This Court has held that while the Texas and federal constitutions mandate "great latitude when the evidence deals with a witness's potential bias, motive or interest to testify in a particular fashion" and the Supreme Court of the United States "did not hold that a defendant has an absolute constitutional right to impeach the *general* credibility of *a witness* in any fashion that he chooses[,]" "[t]he Constitution is offended if the state evidentiary rule would prohibit [the accused] from cross examining a witness concerning possible motives, bias and prejudice to such an extent that he could not present a vital defensive theory."[123] Specific to admissions of juvenile adjudications, this Court has held that the defendant must

---

[123] *Hammer v. State*, 296 S.W.3d at 561-63.

40

demonstrate "logical connection" or "nexus" between the allegation and the witness' past sexual conduct.[124]

It is true Petitioner could say "the complainant fabricated his allegation" all he wanted. However, the trial court's ruling barred him from *asserting* the defense. Perversely and ironically, the ruling made any attempt to ask the complainant about anything at all exacerbate the State's portrayal of complainant as a young innocent manipulated by a devious predator.

In determining whether a defense was asserted/developed, asking about a boy's exposure to Internet pornography, "emotional problems," shoplifting, or difficulty getting along with family and peers can hardly be likened to the opportunity to show that the complainant was and had been (and as it turned out would continue to) sexually abusing his little sister for years, that *this* was the reason he did not get along well with his family members, potentially with his peers, and that his theft and lying and blackmailing of Petitioner to get this handheld game might well have been indicative and symptomatic of the fact that he was a sociopath who knew firsthand the scorn of being a sexual abuser; how effectively to go from being a despised predator to a victim with a falsified outcry.

---

[124] *Irby,* 327 S.W.3d at 145-54, (discussing law regarding admission of victim's status as probationer and concluding evidence not admissible because appellant failed to show "logical connection" between the victim's testimony about his sexual encounters with appellant and his separate probationary status); *cf. Arriola v. State*, 969 S.W.2d 42, 43 (Tex. App.—Beaumont 1998, *pet. ref'd*) (holding evidence of specific instances of victim's past sexual behavior inadmissible because appellant failed to establish a "nexus between that conduct and a motive for bringing false accusations").

*Van Arsdall* provides that the trial court retains wide latitude to impose reasonable limits on cross-examination "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."[125]  However, this can never be appropriate in a swearing match case where the accused is deprived of cross examination into subject matter that suggests motive, means and opportunity to fabricate.

A violation of the Confrontation Clause is subject to a harmless error analysis.[126]  In the context of improper limitation of cross-examination, the Texas Court of Criminal Appeals applies the three-pronged test established in *Delaware v. Van Arsdall*.[127]  First, the appellate court must assume that the damaging potential of the cross-examination was fully realized.[128]  Second, with that assumption in mind, the appellate court must review the error in connection with the following factors: (1) the importance of the witness's testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross-examination otherwise permitted; and (5)

---

[125] *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).
[126] Tex. R. of App. Pro. Rule 44.2(a); *Shelby v. State*, 819 S.W. 2d 544, 546 (Tex. Crim. App. 1991) *citing Van Arsdall*, 475 U.S. at 684.
[127] *Shelby,* 819 S.W. 2d at 547.
[128] *Van Arsdall*, 475 U.S. at 684.

the overall strength of the prosecution's case.[129]   Finally, in light of the first two prongs, the appellate court must determine whether error was harmless beyond a reasonable doubt.[130]   Applying this standard to the constitutional harmless analysis, there was no biological, medical or forensic evidence presented at trial.   The complainant's outcry that Appellant had molested him was delayed for some six to seven months.   There were no other eyewitnesses to these sexual allegations and there was nothing adduced at trial to corroborate the allegation.   The complainant's credibility was the main issue as to the weight of his testimony.   That credibility was in question after his testimony outside the presence of the jury when he was impeached, contradicted himself, and made logically inconsistent statements.  Therefore, there can be no doubt that this error was not harmless beyond a reasonable doubt to Appellant or that any considerations of efficiency or protection of the witness can trump the constitutional priority of a full and unfettered cross examination.

## CONCLUSION

It is difficult to overstate the impact in this case of the trial court's ruling denying Confrontation.  It cut off at the knees Petitioner's sole defense at trial.  It excluded entirely any inquiry into the subject area which would have demonstrated

---

[129] *Id.*
[130] *Id.*

the motive, means and opportunity the complainant had to fabricate the allegation against Petitioner as well as to demonstrate that he was a very different person than the State, the complainant and his father made him out to be during *voir dire* and trial.

Hence, the blanket denial of cross examination prevented the Petitioner his opportunity to develop a complete defense of fabrication, his sole defense at trial. Yet, the trial court allowed the *extremely prejudicial* testimony of the victim of Petitioner's convictions in the early 1980s to rebut the defensive theory that was never fully developed. This violated his right of Confrontation under the Sixth Amendment of the U.S. Constitution and Article I Sections 10 and 19 of the Texas Constitution. It additionally denied him Due Process of Law under the Fifth and Fourteenth Amendments of the U.S. Constitution and Article I Sections 10 and 19 of the Texas Constitution. This denial was additionally contrary to Texas Rules of Evidence 404(b) and 412(b)(1)(C).

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Petitioner respectfully prays this Court grant discretionary review and, either summarily or after full briefing on the merits reverse the ruling of the trial court on both counts of aggravated assault.

Respectfully submitted,

/s/ Jeff Eaves
Jeff Eaves

44

State Bar No. 24045820
900 8th St., Ste. 1400
Wichita Falls, Texas 76301
(940) 322-2002
Fax: (940) 322-1001

/s/ Todd Greenwood
Todd Greenwood
State Bar No. 24048111
813 8th St. Ste. 550-K
Wichita Falls, Texas 76301
Tel./Fax: (940) 689-0707

ATTORNEYS FOR PETITIONER

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of June 2015, a true and correct copy of the foregoing Petition for Discretionary Review was hand delivered to Maureen Shelton, District Attorney and Carey Jensen, Assistant District Attorney, Wichita County Courthouse, Wichita Falls, Texas 79301 and emailed to Lisa C. McMinn, State Prosecuting Attorney, P.O. Box 12405, Austin, Texas 78711, at information@spa.texas.gov.

/s/ Jeff Eaves

## CERTIFICATE OF COMPLIANCE

Pursuant to Tex. R. App. P. 9.4, the undersigned certifies that this brief complies with the type-volume limitations.

1. Exclusive of the exempted portions, this brief contains 10,192 words as indicated by the word count function of Microsoft Word.

2. This brief has been prepared in proportionately spaced typeface in Times New Roman, 14 pt. font except for footnotes which are in 12 pt. font.
3. If the Court requests, the undersigned will provide a print version of the brief and/or copy of the word or line printout.

4. The undersigned understand a material misrepresentation in completing this certificate, or circumvention, of the type-volume limits, may result in the Court's striking the brief and imposing sanctions against the person signing the brief.

Respectfully submitted,

/s/ Jeff Eaves
Jeff Eaves

/s/ Todd Greenwood
Todd Greenwood

46

# APPENDIX A

# APPENDIX B

# APPENDIX C

# APPENDIX A



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-11-00253-CR

| | | |
|---|---|---|
| Joe Dale Johnson | § | From the 89th District Court |
| | § | of Wichita County (48,790-C) |
| v. | § | February 14, 2013 |
| | § | Opinion by Justice Dauphinot |
| The State of Texas | § | (nfp) |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was error in the trial court's judgment. It is ordered that the judgment of the trial court is reversed as to the indecency with a child by contact conviction and sentence, that that conviction and sentence are set aside, and that Appellant is acquitted of Count Three of the indictment. It is further ordered that the trial court's judgment is reversed as to the two aggravated sexual assaults alleged in Counts One and Two of the indictment, and this case is remanded to the trial court for a new trial on those two counts only.

SECOND DISTRICT COURT OF APPEALS

By_____
    Justice Lee Ann Dauphinot



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-11-00253-CR

JOE DALE JOHNSON          APPELLANT

V.

THE STATE OF TEXAS          STATE

----------

## FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY

----------

## MEMORANDUM OPINION[1]

----------

A jury convicted Appellant Joe Dale Johnson of two counts of aggravated sexual assault of a child and one count of indecency with a child, enhanced, and assessed his punishment at life imprisonment. The trial court sentenced him accordingly. In three issues, Appellant argues (1) that the evidence is insufficient to support his conviction for indecency with a child by contact because such alleged

---

[1]*See* Tex. R. App. P. 47.4.

contact is subsumed in the first count of aggravated sexual assault of a child and convictions for both violate double jeopardy protections; (2) that the trial court abused its discretion by excluding evidence that the complainant had sexually assaulted his younger sister; and (3) that the trial court abused its discretion by admitting evidence of Appellant's thirty-year-old prior conviction at the guilt phase of trial. Because the evidence is insufficient to support both Count One and Count Three, we reverse the trial court's judgment as to Count Three, set aside Appellant's conviction and sentence for indecency with a child by contact, and enter a judgment of acquittal on Count Three. Because the trial court reversibly erred by refusing to allow Appellant to correct a confusing or misleading impression on the jury by putting on evidence of the complainant's prior, sexual misconduct, we reverse the trial court's judgment as to Counts One and Two and remand this cause to the trial court for a new trial on those counts.

**Background Facts**

Complainant H.H. was a twelve-year-old boy who was participating in court-ordered counseling for sexually molesting his ten-year-old sister over several years. He had also been caught shoplifting and had strained relationships with his parents. Appellant, a man in his fifties and a board member of the church that he and the complainant attended, had previously been convicted of a sexual offense against a teenage boy thirty years before in Kansas. Appellant and the complainant spent time together, and the complainant accepted work mowing Appellant's and other church members' lawns for pay. The complainant testified that Appellant had lured

4

him into Appellant's study and that Appellant had seduced him into allowing Appellant to perform fellatio on him and sought to have the complainant perform fellatio on Appellant. The complainant eventually told the youth minister, who was never interviewed by law enforcement and did not testify at trial, what had happened. The youth minister went to the complainant's parents to tell them what their son had told him. The parents, in turn, reported what they had been told to the Burkburnett Police Department. The purported offenses were alleged to have occurred in April 2007.

At trial, Appellant sought to elicit testimony that the complainant had been adjudicated delinquent for sexually molesting his ten-year-old sister and, among other things, was in court-ordered counseling as a result. On appeal, Appellant argues that the excluded evidence (1) was admissible to rebut the false impression the State had left with the jury regarding the primary reason the complainant was in counseling, thereby opening the door for the sexual abuse evidence; (2) impeached the complainant's testimony that his guilt in being the victim of sexual abuse was relieved when he made his outcry; and (3) supported the defense's theory that the complainant had fabricated the abuse allegations against Appellant to get attention and sympathy for himself. In the trial court, Appellant offered the evidence on the basis that under the Sixth Amendment, cross-examination is the fundamental right of a defendant, affecting due process. He argued that the evidence showed the complainant's mental state at the time he made the outcry and what he was in counseling for. He also argued that the complainant's past sexual behavior could be

5

motive or bias for making the outcry, not only for deception, but to get attention, and that the evidence was admissible to show the complainant's knowledge of sexual matters.

**Double Jeopardy**

In his third issue, Appellant argues that because the crime of indecency with a child by contact, as alleged in Count Three of the indictment, was subsumed in the crime of aggravated sexual assault of a child as alleged in Count One of the indictment, the evidence is insufficient to show that Appellant committed a separate indecency offense as alleged in the indictment. He further argues that having two convictions rely on the same act of touching violates double jeopardy protections. The record clearly shows that the sexual contact proved at trial occurred during and as part of the aggravated sexual assault alleged in Count One. As the State candidly concedes, to allow both convictions to stand would violate the double jeopardy clause of the Constitution of the United States.[2] Because the contact alleged in Count Three was subsumed in the aggravated sexual assault of a child alleged in Count One, we sustain Appellant's third issue. We reverse the trial court's judgment as to Count Three, set aside Appellant's conviction and

---

[2]*See* U.S. Const. amend. V; *Brown v. Ohio*, 432 U.S. 161, 165, 97 S. Ct. 2221, 2225 (1977); *Ex parte Herron*, 790 S.W.2d 623, 624 (Tex. Crim. App. 1990) (op. on reh'g).

6

punishment for indecency with a child by contact as alleged in Count Three,[3] and enter a judgment of acquittal on Count Three.[4]

## Evidentiary Issues

### The Complainant's Prior Bad Acts

In his first issue, Appellant contends that the trial court erred by excluding evidence in violation of the Sixth Amendment, the Due Process Clause, and rules of evidence 404(B) and 412 that the complainant had sexually assaulted his younger sister. Appellant argues that "[t]he evidence that the alleged victim had sexually molested his little sister was admissible because the State left a false impression with the jury during its direct exam of the alleged victim and because it was admissible to show his mental status at the time of his alleged outcry."

The State concedes that Appellant preserved his constitutional complaint but argues that he failed to preserve that portion of his complaint concerning the State's creating a false impression. After reviewing the record, we disagree. In offering the evidence, defense counsel argued,

---

[3]*See Bigon v. State*, 252 S.W.3d 360, 373 (Tex. Crim. App. 2008) (retaining first-degree felony as "most serious offense" over second-degree felony with identical sentence); *Ex parte Pruitt*, 233 S.W.3d 338, 348 (Tex. Crim. App. 2007) (holding genital contact subsumed within alleged incident of penetration is lesser included offense of penetration); *Patterson v. State*, 152 S.W.3d 88, 92 (Tex. Crim. App. 2004) (holding penile contact with genitals in course of penile penetration subsumed).

[4]*See Bigon*, 252 S.W.3d at 373.

7

And the *Merch* case and others have said that the—the person's mental state at the time that, you know, he—he makes this outcry, I think is relevant and what's going on in his head. And he said that it affected his mental state. That's what he was in counseling for and so I think it goes in for that.

Indeed, Appellant's entire defense was an attempt to show that the State was creating the false impression that the complainant was a victim, a child who was emotionally distraught over being victimized and sufficiently innocent to be embarrassed to discuss it. The State wanted to create the impression with the jury that the complainant was truthful; Appellant wanted to show the jury that the complainant was a liar. Appellant's position throughout the trial, which he has maintained on appeal, was that the State created the false impression that the complainant was innocent in sexual matters. That was an impression that Appellant sought to dispel at trial and now seeks to dispel on appeal. We therefore hold that Appellant sufficiently preserved this entire issue for appellate review.

Outside the presence of the jury, the complainant testified that he had sexually abused his younger sister both before and after Appellant's sexual assaults on him. The complainant also testified that his parents put him in counseling because he was sexually abusing his sister. There was evidence that the counseling was court-ordered as a result of the complainant's sexual abuse of his younger sister over several years. Sexual abuse of his sister was one of the things that the complainant was struggling with in November 2007 and contributed to his emotional difficulties. Before the jury, however, the complainant's father testified that the complainant was being bullied at school, suffering from depression, had a

8

stressful relationship with his parents, and had been caught shoplifting. Watching pornography was also an issue. The complainant's father testified that those were the reasons that he and his wife had placed the complainant in counseling, although, when asked if the complainant was in counseling before April 2007, his father testified that he could not remember when counseling began. The following exchange occurred before the jury:

Q.     Okay. And so he—you would agree with me that during the fall of 2007, including November of '07—November of 2007, he was dealing with a lot of issues, correct?

A.     There were issues, yes.

Q.     And he was having emotional difficulties, correct?

A.     Yes.

Outside the presence of the jury, the complainant testified to the sexual abuse of his sister. In the jury's presence, he testified that Appellant had sexually abused him. He also testified about his use of pornography and stealing. He said that he had watched pornography for a long time. According to his father, the complainant had viewed pornography at least since he was ten years old. But the complainant also testified that he had gone four months without watching pornography until Appellant influenced him to start watching pornography again. The complainant also testified that he was angry at Appellant because Appellant had let him play with a Nintendo DS that had been donated to the church but then took the DS away from him. Then the complainant testified,

9

Q. At some point you made the decision to tell someone about the sexual acts [by Appellant against the complainant]?

A. Yes.

Q. Why did you decide to do that?

A. Because after the DS wasn't allowed to come to the teen group, I was at first pretty angry that I didn't get the DS like I wanted, but then I got to thinking about it and then I thanked Jimmy for not letting us have it. That was the teen leader that didn't allow it to come through. And I told him that I was thankful for it[,] and he said that—why are you glad that that didn't happen? I said, well, let's just say I can't tell you. And he said, well, that sounds a lot like something that happened to me.

Q. And then—and then did you tell him what happened to you?

A. Yes.

Q. Did you tell him everything?

A. Yes.

Q. How did you feel when you told him?

A. I felt better, like a weight off my shoulders . . . .

The State argues that the rules of evidence and the family code prevented impeachment by a juvenile adjudication and that the evidence was not relevant to Appellant's theory of fabrication. We disagree. The Texas Court of Criminal Appeals has set out a hierarchy for situations in which there is a conflict between the caselaw and its rules. Rule of Evidence 101(c) states that in criminal cases,

[h]ierarchical governance shall be in the following order: the Constitution of the United States, those federal statutes that control states under the supremacy clause, the Constitution of Texas, the Code of Criminal Procedure and the Penal Code, civil statutes, these

10

rules, and the common law. Where possible, inconsistency is to be removed by reasonable construction.[5]

The Texas Court of Criminal Appeals addressed the appropriate balancing of interests between rule 403 and a defendant's right to confront and cross-examine his accuser and to present his defense in a sexual assault case in *Hammer v. State*:

> Trials involving sexual assault may raise particular evidentiary and constitutional concerns because the credibility of both the complainant and defendant is a central, often dispositive, issue. Sexual assault cases are frequently "he said, she said" trials in which the jury must reach a unanimous verdict based solely upon two diametrically different versions of an event, unaided by any physical, scientific, or other corroborative evidence. Thus, the Rules of Evidence, especially Rule 403, should be used sparingly to exclude relevant, otherwise admissible evidence that might bear upon the credibility of either the defendant or complainant in such "he said, she said" cases. And Texas law, as well as the federal constitution, requires great latitude when the evidence deals with a witness's specific bias, motive, or interest to testify in a particular fashion.[6]

The *Hammer* court concluded that "the constitution is offended if the state evidentiary rule would prohibit him from cross-examining a witness concerning possible motives, bias, and prejudice to such an extent that he could not present a vital defensive theory."[7]

In presenting its case and in jury argument in the trial court, the State repeatedly referred to the reluctance of a boy the complainant's age to admit to the

---

[5]Tex. R. Evid. 101(c).

[6]296 S.W.3d 555, 561–62 (Tex. Crim. App. 2009) (footnotes omitted).

[7]*Id.* at 562–63.

11

sexual acts that he claimed Appellant committed against him, essentially natural shyness to speak of sexual matters. Further, the State repeatedly spoke of the grooming that would cause an innocent young man to become the victim of a sexual predator. Finally, the prosecutor began the State's rebuttal final argument by reminding the jury that he had told them during opening statement that "this case is about a deviant man who took sexual advantage of a young boy . . . [,] how [Appellant] took sexual advantage of [the complainant] for [Appellant's] own pleasure and . . . manipulated [the complainant,] . . . and these are the aftereffects that you've heard about this week." Final argument continued in this vein until the very end.

The State left the impression with the jury that the complainant's emotional problems, watching pornography, conflict with his parents, and need for counseling all arose as a result of his victimization by school bullies and by Appellant, who caused him to participate in sexual activities. This was a false impression that Appellant was entitled to rebut[8] as part of his fundamental due process right to confront and cross-examine witnesses against him in challenging the State's case.[9]

---

[8]*See Renteria v. State*, 206 S.W.3d 689, 697–98 (Tex. Crim. App. 2006) (holding that exclusion of evidence showing the defendant's remorse violated due process by preventing defendant from rebutting the State's case when the State left jury with false impression and emphasized it).

[9]*See Holmes v. South Carolina*, 547 U.S. 319, 324, 126 S. Ct. 1727, 1731 (2006) ("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful

The United States Supreme Court said in *Pointer v. Texas,*

> There are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal. Indeed, we have expressly declared that to deprive an accused of the right to cross-examine the witnesses against him is a denial of the Fourteenth Amendment's guarantee of due process of law.[10]

Appellant was entitled to present his defense. As a fundamental right, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense. The complainant had already been adjudicated delinquent for sexually assaulting his younger sister. He was not particularly remorseful for that conduct, and his actions resulted in strained relations with his parents and the need for counseling. He was mad at Appellant, and, having been adjudicated delinquent for sexually assaulting his younger sister, he knew firsthand or should have known how damning and indefensible an accusation of sexual assault could be. Appellant was entitled to correct the misleading characterization of the complainant that the

---

opportunity to present a complete defense." (quoting *Crane v. Kentucky,* 476 U.S. 683, 690, 106 S. Ct. 2142, 2146 (1986)) (internal quotations and citations omitted)); *see also California v. Trombetta,* 467 U.S. 479, 486 n.6, 104 S. Ct. 2528, 2532 n.6 (1984) ("In related cases arising under the Sixth and Fourteenth Amendments, we have recognized that criminal defendants are entitled to call witnesses on their own behalf and to cross-examine witnesses who have testified on the government's behalf." (citations omitted)); *Holmes v. State,* 323 S.W.3d 163, 173 (Tex. Crim. App. 2009) (op. on reh'g) ("[T]he trial court's ruling disallowing cross-examination of the State's expert witness violated the defendant's fundamental rights to a fair trial.").

[10]380 U.S. 400, 405, 85 S. Ct. 1065, 1068 (1965).

13

State had presented to the jury, but the trial court impermissibly limited his right to cross-examine both the complainant and other witnesses against Appellant and to present evidence. We therefore hold that the trial court abused its discretion by not allowing Appellant to cross-examine the complainant and other adverse witnesses with evidence of the complainant's prior sexual victimization of his little sister.

Rule 44.2(a) of the Rules of Appellate Procedure provides that "[i]f the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment."[11] Appellant was not allowed to present his defense to the jury in any sense other than argument and innuendo. He was not allowed to offer substantive evidence to rebut the picture of the complainant painted by the State and to explain the bases of Appellant's assertion that the complainant was not the shy innocent who was devastated by sexual abuse requiring counseling to repair the emotional damage. No scientific evidence, no witness, no physical evidence, and no admission otherwise supported the complainant's allegations. It was simply a swearing match. We therefore cannot say beyond a reasonable doubt that the error did not contribute to Appellant's convictions or punishment on the two remaining counts.

---

[11]Tex. R. App. P. 44.2(a).

In summary, the State's questioning of the complainant and his father painted an incomplete and misleading picture of the complainant and the circumstances of his outcry. By developing the testimony as it did, the State opened the door to evidence that could have accurately conveyed why the complainant was in counseling, what motivation he may have had to make up a false accusation, and the degree to which he understood sexual matters and to which he personally appreciated legal consequences imposed upon sex offenders.

It should be clear, however, that this opinion is not a green light for Appellant in any subsequent retrial, or for other litigants in other similar cases, to explore in detail the sexual exploits of the complainant or those in positions similar to that in which the complainant finds himself in this case. It is the fact that, and the manner in which, the State created a false impression that opened the door to evidence that the complainant had sexual issues before he met Appellant. We stress that our holding is confined to the record presented in this appeal. The details of the complainant's abuse of his sister, in terms of its nature, frequency, and duration, may not be necessary to rebut the false impression that the complainant did not have issues of a sexual nature before his alleged sexual encounter with Appellant. With these reservations clearly understood, we sustain Appellant's first issue, and because of our disposition of this issue, we do not reach his second issue.[12]

---

[12]*See* Tex. R. App. P. 47.1.

## Conclusion

Having sustained Appellant's third issue, we reverse the trial court's judgment as to the indecency with a child by contact conviction and sentence, set aside that conviction and sentence, and enter a judgment of acquittal as to Count Three of the indictment. Having sustained Appellant's first issue, we reverse the trial court's judgment as to the two aggravated sexual assaults alleged in Counts One and Two of the indictment and remand this case to the trial court for a new trial on those counts only.

LEE ANN DAUPHINOT
JUSTICE

PANEL: DAUPHINOT, WALKER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: February 14, 2013

# APPENDIX B



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-11-00253-CR

JOE DALE JOHNSON                                                      APPELLANT

V.

THE STATE OF TEXAS                                                         STATE

----------

FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY
TRIAL COURT NO. 48,790-C

----------

## OPINION ON EN BANC RECONSIDERATION

----------

We grant the State's motion for en banc reconsideration, withdraw and vacate our February 14, 2013 memorandum opinion and judgment, and substitute the following. *See* Tex. R. App. P. 49.7.

Appellant Joe Dale Johnson appeals from his convictions for two counts of aggravated sexual assault of a child and one count of indecency with a child. For the following reasons, we affirm Johnson's two convictions for aggravated sexual

assault of a child but reverse the trial court's judgment of conviction for indecency with a child and enter a judgment of acquittal on that count.

## I. BACKGROUND

### A. FACTS

It is undisputed that H.H. was troubled. In the fall of 2007 when he was thirteen, H.H. was suffering from depression, was bullied at school, was interested in pornography, had been caught shoplifting, and had a "strained" relationship with his mother. Indeed, H.H.'s father and mother had placed him in counseling to address these issues.

Johnson, who was in his fifties, was a lay leader at the church that H.H. and his family began attending in 2005. Johnson and H.H. began spending time together, and H.H. began mowing Johnson's lawn for extra money when he was twelve. In the spring of 2007, shortly before H.H. turned thirteen and when he was alone with Johnson at Johnson's house, Johnson asked to see H.H.'s penis. H.H. complied because he felt indebted to Johnson for all the time Johnson spent with him. Johnson then showed H.H. "some pornography that he had downloaded to his computer." H.H. admitted this was not the first time he had seen pornography. Johnson persuaded H.H. to allow Johnson to fellate H.H. while H.H. watched the pornography. Johnson fellated H.H. until H.H. ejaculated. Johnson then told H.H. to fellate him, which H.H. did "for five seconds" but stopped "because [H.H.] didn't like it." Johnson and H.H. then left the house and mowed Johnson's lawn. Johnson paid H.H. $50 that day.

2

Johnson took H.H. to Wal-Mart, and H.H. "spent just about every bit of cash that [Johnson] gave [H.H.] that day for mowing his lawn and doing the sexual [acts]."

In August 2007, Johnson gave a Nintendo DS gaming system to the youth group at the church. Johnson previously had told H.H. that he would get H.H. a Nintendo DS if H.H. did "something else" to "earn the DS." H.H. then wrote Johnson a note, which he never delivered to Johnson, stating that the "something else" was H.H. keeping secrets, "lying to [his] parents, and [his] friendship" with Johnson. It appears that Johnson gave the Nintendo DS to H.H. at church but told H.H. to say that Johnson had donated it to the youth group. The church decided not to allow the youth group to use the Nintendo DS.

H.H. "was at first pretty angry that [he] didn't get the DS like [he] wanted" but then thanked the youth-group leader for not allowing the group to use the DS. When the youth-group leader asked why H.H. was so thankful, H.H. said, "[W]ell, let's just say I can't tell you." The youth-group leader pressed H.H., and H.H. told "everything" that had happened between himself and Johnson. H.H. stated that he "felt better, like a weight off [his] shoulders." The youth-group leader told H.H.'s parents about H.H.'s outcry, and H.H.'s parents reported it to the police. Johnson was arrested on December 6, 2007.

## B. PROCEDURE

### 1. Pretrial

On October 7, 2009, Johnson was indicted for (1) aggravated sexual assault of a child by causing H.H.'s sexual organ to contact Johnson's mouth;

3

(2) aggravated sexual assault of a child by causing the penetration of H.H's mouth by Johnson's sexual organ; and (3) indecency with a child by touching H.H.'s genitals. *See* Tex. Penal Code Ann. § 21.11(a) (West 2011), § 22.021(a) (West Supp. 2014). The indictment contained an enhancement paragraph alleging that Johnson had been previously convicted in 1980 of aggravated sodomy in Kansas. *See id.* § 12.42 (West Supp. 2014).

Before trial, the State gave notice that it intended to introduce evidence that Johnson had been convicted of (1) aggravated sodomy of G.M. in 1980 in Kansas; (2) aggravated sodomy of B.B. in 1982 in Kansas; and (3) indecent liberties with a child in 1982 in Kansas. The State also notified Johnson that it intended to call G.M. as a witness. Johnson filed a motion to suppress the admission of these convictions, and the trial court deferred its ruling until the convictions were offered at trial.

Also before trial, Johnson asserted that a recently-discovered juvenile adjudication against H.H. was admissible as impeachment evidence. The State agreed to produce "any convictions admissible for impeachment purposes as to [its] witnesses that is within the knowledge of the [State]." At the time of the pretrial hearing, the State did not have any specific information regarding H.H.'s juvenile adjudication but knew that it was a sexual offense and that the adjudication occurred "months or almost a year" after H.H.'s outcry against Johnson. The trial court deferred a final ruling on the adjudication's admissibility until trial.

4

## 2. Trial

During opening arguments to the jury, defense counsel asserted that H.H. had fabricated the allegations against Johnson:

> And I will submit to you, ladies and gentlemen, this witness [H.H] has admitted that he lies on occasion. You're going to hear that this witness has been addicted to porn since he was ten years old in Delaware.

> You're going to see that this witness, this 13, almost 14-year-old witness, is not your regular, normal 13, almost 14-year-old boy. And the D.A. is going to want y'all to base y'all's decision on this witness and potentially send my client to prison for the rest of his life.

> Ladies and gentlemen, you're going to hear that this witness wanted a . . . Nintendo DS. He was so upset about it that he wrote a note and then seven months later, he makes up this story that something happened seven months earlier.

The State first called H.H.'s father (Father) as a witness. Father testified to the relationship between H.H. and Johnson and that Father had stopped it in June 2007. He also testified that he was aware that H.H. "had looked at pornography in the past." On cross-examination, Johnson's counsel, after gaining the trial court's permission, asked Father if H.H. was in counseling in November 2007 at the time of H.H.'s outcry. Father confirmed that he and H.H.'s mother put H.H. in counseling because H.H. was depressed, had issues at school, and was viewing pornography. Defense counsel also elicited from Father that H.H. had "gotten in trouble" for shoplifting around the time of the outcry. On redirect examination, the State briefly clarified with Father that he and H.H.'s mother had "initiated" the counseling.

5

H.H. testified to his relationship with Johnson and its progression from "hanging out" to fellatio and pornography. On cross-examination by defense counsel, H.H. confirmed that he had been watching pornography since the age of ten. He stated that he believed he began voluntary counseling after the incident with Johnson in the summer of 2007 and continued until April 2008. Defense counsel got H.H. to agree that when he did not get the Nintendo DS from Johnson, H.H. knew he "could make an accusation of sexual abuse and get somebody in trouble."

Outside of the presence of the jury, H.H. admitted that he "had been sexually abusing [his] sister for a number of years." Indeed, H.H.'s juvenile adjudication, which was admitted for appellate purposes only, showed that he was adjudicated for delinquent conduct on July 18, 2008, and ordered into sex-offender treatment. *See* Tex. R. Evid. 103(b). Johnson asked for admission of this evidence to show H.H.'s "emotional state in November of 2007 [a]ffecting his perceptions and thoughts" and "that his motive for [accusing Johnson] was not only for deception, but to get attention." The State objected to the testimony because the 2008 conviction was not relevant to Johnson's fabrication theory and because the juvenile adjudication was inadmissible under rule 609. *See* Tex. R. Evid. 609. The trial court sustained the State's objection and did not allow admission of H.H.'s juvenile adjudication. But the trial court allowed Johnson to inquire into the shoplifting accusation. Indeed, H.H. admitted that he had been caught shoplifting "close to the time" he accused Johnson.

6

The State also called G.M. as a witness and explained his testimony would rebut Johnson's theory that H.H. fabricated his accusation against Johnson:

> [I]t's rebuttal of the defense's theory that has been put forward so far. What it is, is his name is [G.M.], Your Honor. He is . . . now a 44-year-old man who . . . we believe can testify that he was molested by Joe Johnson under almost mirror like circumstance in 1979 . . . .
>
> . . . I can point to numerous instances before and throughout this trial that we believe the door has been opened to the fabrication, frame up, retaliation defense, Your Honor.

Over Johnson's objection, the trial court concluded that G.M.'s testimony would be relevant to rebut the defensive theory of the case and would not be unduly prejudicial: "[T]he defense of fabrication has come through loud and clear from the time of the voir dire of the Jury on up and through the examination of the last witness. So I'm going to allow it in. . . ." G.M. testified that Johnson, who was in his twenties at the time, promised "to give [him] stuff if [he would] let [Johnson] suck [him]" when G.M. was thirteen years' old. Indeed, Johnson fellated G.M., and G.M. reciprocated "[b]ecause [G.M.] wanted a motorcycle."

In his closing argument to the jury, Johnson's counsel again stressed that H.H. was not credible and had multiple reasons to fabricate the allegations against Johnson:

> There's no other evidence to support [H.H.'s] allegation. . . . So it comes down . . . to that one witness case, whether he's credible or not.
>
> . . . .

7

So the investigation was bad in this case. And [the investigating officer] doesn't even know he's having trouble at school. He doesn't have any friends. This is an emotionally troubled kid who I would suggest to you is showing antisocial traits at the time. . . . Can you really understand what's going on in this kid's mind during this timeframe? Doesn't have friends at school, the relationship with his mother is not good, the relationship with his father's no good, he's looking at pornography, he's in counseling, he's shoplifting. This is a kid who you cannot trust at this timeframe.

. . . .

Instead of buying [H.H. a Nintendo DS], he gives it to the church, so [H.H.] gets mad, sure he does. Right around this time in November, [Johnson] gives this Nintendo to the church and [H.H.] gets mad. So here we have this kid who is all emotionally troubled, emotionally in counseling and he doesn't get what he wants and he reacts and he's irritated.

. . . .

Also folks, [H.H.'s] needing attention during this timeframe and he's getting it from [the youth-group leader]. He's trying to make [the youth-group leader] feel sympathetic towards him so he has a friend. [The youth-group leader] had been sexually molested and so [H.H.] says, okay, well, I have too.

The jury found Johnson guilty of all three counts, found the enhancement paragraph true, and assessed his punishment at life confinement for each count. The trial court entered judgments accordingly and ordered the sentences to run consecutively. *See* Tex. Code Crim. Proc. Ann. art. 42.08(a) (West Supp. 2014). Johnson appeals and argues that (1) the trial court abused its discretion by excluding evidence that H.H. had sexually assaulted his sister and had been adjudicated for engaging in delinquent conduct; (2) the trial court abused its discretion by admitting evidence of Johnson's 1980 conviction for the aggravated

8

sodomy of G.M. at the guilt-innocence phase of trial; and (3) his conviction for indecency with a child by contact was subsumed into the first count of aggravated sexual assault of a child, rendering the dual convictions a violation of double jeopardy.

## II. ADMISSION AND EXCLUSION OF EVIDENCE

### A. STANDARD OF REVIEW

We review a trial court's decision to admit or exclude evidence under an abuse-of-discretion standard. *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009); *Robbins v. State,* 88 S.W.3d 256, 259–60 (Tex. Crim. App. 2002); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). As long as the trial court's ruling falls within the zone of reasonable disagreement, we will affirm its decision. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). We must uphold the trial court's decision "[i]f the ruling was correct on any theory of law applicable to the case, in light of what was before the trial court at the time the ruling was made." *Sauceda v. State*, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004).

### B. EXCLUSION OF PAST SEXUAL HISTORY AND JUVENILE ADJUDICATION

Johnson asserts that the trial court abused its discretion by excluding evidence that H.H. had sexually assaulted his sister and had been adjudicated for engaging in delinquent conduct. Evidence of a sexual-assault victim's past sexual behavior is not admissible unless it "relates to the motive or bias of the alleged victim" or "is constitutionally required to be admitted." Tex. R. Evid.

412(b)(2)(C), (E). Furthermore, such evidence must be more probative than prejudicial. Tex. R. Evid. 412(b)(3); *see also* Tex. R. Evid. 403. Similarly, evidence of a witness's juvenile adjudication is inadmissible "unless required to be admitted by the Constitution of the United States or Texas." Tex. R. Evid. 609(d).

Johnson posits several theories mandating admission of H.H.'s juvenile adjudication. First, he argues that the State left a false impression as to why H.H. was in counseling, which invited the admission of H.H.'s juvenile adjudication. But Johnson, not the State, initially introduced the topic of H.H.'s voluntary counseling in late 2007 during his cross-examination of Father. Father, in response to Johnson's questions on cross-examination, testified for the first time that H.H. was in counseling for depression, "[s]ome issues at school," and pornography. Johnson cannot introduce a topic into evidence—here, H.H.'s voluntary counseling in the fall of 2007—and then claim the State left a false impression with the jury regarding the nature of H.H.'s counseling. *See Shipman v. State*, 604 S.W.2d 182, 184–85 (Tex. Crim. App. [Panel Op.] 1980); *Blackwell v. State*, 193 S.W.3d 1, 10–15 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). Further, Johnson seems to assert that H.H.'s counseling in the fall of 2007 was court-ordered based on the juvenile adjudication while Father's and H.H.'s testimony about counseling implied that it was necessary "solely due to his relationship with his parents." But H.H.'s adjudication, which included court-ordered counseling, did not occur until July 18, 2008; thus, the 2007 counseling

10

could not have been court-ordered. Indeed, Johnson's counsel asserted during closing jury arguments that H.H.'s counseling in 2007 was "emotional[]" counseling.

Johnson's second theory of admissibility is that H.H.'s past sexual assaults of his sister would have shown his mental health at the time he reported Johnson's actions and at the time of his testimony. But the jury heard testimony that H.H. was in counseling at the time of the outcry, was depressed, had a habit of viewing pornography, had a strained relationship with his parents, had been caught shoplifting, was angry at Johnson for not giving him the Nintendo DS, and knew a report of sexual assault would get Johnson in trouble. Although Johnson was not allowed to introduce H.H.'s past sexual history with his sister and resultant juvenile adjudication in 2008,[1] the admitted evidence effectively indicated H.H.'s mental health at the time of the outcry and when he testified against Johnson. *See Irby v. State*, 327 S.W.3d 138, 145 & n.29 (Tex. Crim. App. 2010) ("The constitutional right to cross-examine concerning the witness's potential bias or prejudice does not include 'cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S. Ct. 292, 295 (1985))).

---

[1]H.H.'s juvenile record shows that H.H. stipulated to engaging in delinquent conduct when he sexually assaulted his sister on April 20, 2008, which was after H.H.'s outcry and Johnson's arrest.

11

Johnson's third theory is that the evidence was admissible to challenge H.H.'s assertion that he was relieved after he told the youth-group leader about the assault. During his direct testimony, H.H. testified that after he told the youth-group leader "everything," he "felt better, like a weight off [his] shoulders." In an offer of proof, H.H. stated that he felt "minute" guilt about his sister. But he then immediately testified that he "felt guilt" for abusing his sister. The connection between his relief after telling someone about Johnson and his guilt about his sister is tenuous at best. Johnson has failed to carry his burden to show that the trial court's ruling was outside the zone of reasonable disagreement based on this theory. *Cf. Chitwood v. State*, 350 S.W.3d 746, 748 (Tex. App.—Amarillo 2011, no pet.) (holding evidence of victim's past sexual history not admissible under rule 412(b) because appellant gave no explanation how evidence of victim's sexual activity with a third party showed motive to falsely accuse appellant of sexual assault).

Fourth, Johnson asserts that the evidence should have been admitted because it was necessary to show that H.H. made a false accusation to get attention from his parents and "get himself out of trouble in the eyes of his parents." However, the record shows that the jury had a glut of evidence by which it could be inferred that H.H. fabricated his accusation: H.H. knew such an accusation would get someone in trouble, he was mad at Johnson about the Nintendo DS, he had been caught shoplifting, he had a bad relationship with his parents, he was in counseling for his problems, and he had a pornography habit.

Indeed, defense counsel raised all of these grounds in his closing argument to the jury and urged that they indicated H.H. was not credible; thus, he was not prevented from presenting this defensive theory. This admissibility theory does not establish an abuse of discretion. *See Hammer v. State*, 296 S.W.3d 555, 562-63 (Tex. Crim. App. 2009) ("[T]he [Supreme] Court did not hold that a defendant has an absolute constitutional right to impeach the general credibility of a witness in any fashion that he chooses. But the constitution is offended if the state evidentiary rule would prohibit him from cross-examining a witness concerning possible motives, bias, and prejudice to such an extent that he could not present a vital defensive theory."); *cf. Arriola v. State*, 969 S.W.2d 42, 43 (Tex. App.—Beaumont 1998, pet. ref'd) (holding evidence of specific instances of victim's past sexual behavior inadmissible because appellant failed to establish a "nexus between that conduct and a motive for bringing false accusations").

Johnson's fifth theory is that the sexual-abuse evidence was necessary to show that H.H. "was not naïve about sexual behavior and knowledge of sexual matters" and to show his "knowledge that an individual can get in trouble for committing sexual acts on a juvenile." H.H. testified that he knew he "could make an accusation of sexual abuse and get somebody in trouble." Further, there was evidence that H.H. had viewed pornography before the incident with Johnson and that he had multiple problems at home, at school, and personally, which required voluntary counseling. The jury was not left with the false impression that H.H. did not know that a sexual-assault accusation could get someone in

13

trouble or that H.H. had no "knowledge about sexual matters" as posited by Johnson.

Although the constitutional right of confrontation includes the right of cross-examination to show bias or fabrication, the trial court retains wide latitude to impose reasonable limits on such cross-examination "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 1435 (1986). Here, Johnson has failed to show that the excluded evidence about H.H.'s past sexual behavior and subsequent juvenile adjudication fell outside this wide latitude and did not relate to any of the valid concerns recited in *Van Arsdall*. *See, e.g., Irby*, 327 S.W.3d at 145–54 (discussing law regarding admission of victim's status as probationer and concluding evidence not admissible because appellant failed to show "logical connection" between the victim's testimony about his sexual encounters with appellant and his separate probationary status). Thus, we conclude the trial court did not abuse its discretion by excluding this evidence and overrule Johnson's first issue.[2]

---

[2]We need not address whether admission of the juvenile adjudication would have been more prejudicial than probative and, thus, inadmissible even though relevant. *See* Tex. R. Evid. 403. Such an analysis is necessary only if the evidence is found to be relevant and admissible, which we (like the trial court) have concluded the juvenile adjudication was not. *See, e.g.,* Tex. R. Evid. 403, 412(b)(3).

14

## C. ADMISSION OF EXTRANEOUS-OFFENSE EVIDENCE

Johnson argues that the trial court abused its discretion by admitting evidence of his 1980 conviction for the aggravated sodomy of G.M. at the guilt-innocence phase of trial. He asserts the evidence was inadmissible because it was mere propensity or conformity evidence, it had the "taint of fabrication," it was too prejudicial, and the State gave inadequate notice to Johnson of its intent to use the prior offense.

Generally, character evidence may not be used to prove circumstantially that a person acted in conformity with that character on a particular occasion. *See* Tex. R. Evid. 404(a). Such evidence may be admissible, however, to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Tex. R. Evid. 404(b). A trial court does not abuse its discretion by admitting evidence under rule 404(b) if the evidence shows that (1) the extraneous transaction is relevant to a material, nonpropensity issue and (2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury. *De La Paz*, 279 S.W.3d at 344; *Sandoval v. State*, 409 S.W.3d 259, 297–98 (Tex. App.—Austin 2013, no pet.); *Beasley v. State*, 838 S.W.2d 695, 701–02 (Tex. App.—Dallas 1992, pet. ref'd), *cert. denied*, 510 U.S. 969 (1993). Rule 404 excludes only that evidence that is offered solely for the purpose of proving bad character and conduct in conformity with that bad character. *De La Paz*, 279

15

S.W.3d at 343. One rationale allowing admission of character evidence is to rebut a defensive theory. *Id.*

Here, Johnson asserted in his opening argument to the jury that H.H. lied about Johnson. Johnson then questioned H.H. about a possible reason for the fabrication—H.H.'s anger over not getting a Nintendo DS from Johnson—and his desire to get Johnson in trouble, which H.H. knew a sexual-assault allegation would accomplish. The State called G.M. as its last witness in its case in chief to rebut Johnson's fabrication and retaliation theories, which the trial court recognized "c[a]me through loud and clear from the time of the voir dire of the Jury on up and through the examination of the last witness." Indeed, a defendant's opening statement supported by subsequently admitted evidence may open the door to the admission of extraneous-offense evidence to rebut defensive theories presented in that opening statement. *Bass v. State*, 270 S.W.3d 557, 563 & n.7 (Tex. Crim. App. 2008); *see also Wheeler v. State*, 67 S.W.3d 879, 887 n.22 (Tex. Crim. App. 2002); *Martin v. State*, Nos. 02-07-308– 316-CR, 2008 WL 4831345, at *11 (Tex. App.—Fort Worth Nov. 6, 2008, pet. ref'd) (mem. op., not designated for publication). Johnson's actions with G.M. were substantially similar to his actions with H.H. In both instances, Johnson arranged to be alone with the thirteen-year-old male victims and promised gifts in exchange for fellatio. Indeed, Johnson recognizes that the offenses are similar.

Johnson argues that even if the defense of fabrication was sufficiently raised to justify admission of the extraneous-offense evidence in rebuttal and

even if the offenses were substantially similar, the 1980 conviction was not "free from any taint of fabrication." But contrary to Johnson's argument, the extraneous offense does not need to be completely free of a motive to fabricate the extraneous offense to be admissible. *See Dennis v. State*, 178 S.W.3d 172, 180 (Tex. App.—Houston [1st Dist.] 2005, pets. ref'd). What is required is that the extraneous offense be one for which the fabrication motive of the victim in the instant offense (not the victim of the extraneous offense) is absent. *See id.* No such fabrication motive by H.H. is present regarding the 1980 conviction.

Johnson next argues that admission of the prior conviction, even if relevant, was more prejudicial than probative, which renders the admission an abuse of the trial court's discretion. Under rule 403, the trial court considers several factors in determining admissibility: (1) how compellingly the extraneous offense serves to make a fact of consequence more or less probable, (2) the potential the evidence has to impress the jury in an irrational and indelible way, (3) the time the proponent will need to develop the evidence, and (4) the force of the proponent's need for the evidence to prove a fact of consequence and whether there is other probative evidence available to establish the fact at issue. *De La Paz*, 279 S.W.3d at 348–49. We presume that relevant evidence will be more probative than prejudicial. *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006).

Here, Johnson clearly and repeatedly argued to the jury that H.H. fabricated the allegations against him, which rendered the extraneous-offense

17

necessary to rebut that defense. G.M.'s testimony lasted only fifteen minutes in the guilt-innocence phase of trial, which spanned a total three days. Although Johnson previously had been convicted of two other sexual offenses against children, which also would have rebutted Johnson's fabrication theory, the State sought to introduce only one of his prior convictions. Further, the trial court gave limiting instructions to the jury regarding the extraneous-offense evidence, which obviated any concern that the testimony would be given undue weight. We conclude that the trial court did not abuse its discretion by admitting the extraneous-offense evidence because the evidence was relevant apart from showing character—to rebut Johnson's fabrication and retaliation theories—and because the probative value of the extraneous-offense evidence was not substantially outweighed by its prejudicial effect. *See, e.g., Newton v. State*, 301 S.W.3d 315, 317–22 (Tex. App.—Waco 2009, pet. ref'd); *Isenhower v. State*, 261 S.W.3d 168, 181–82 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *see also Espinoza v. State*, No. 11-07-00382-CR, 2010 WL 227680, at *2–3 (Tex. App.— Eastland Jan. 21, 2010, no pet.) (mem. op., not designated for publication).

Johnson also argues that the State gave inadequate notice of its intent to offer evidence of the previous conviction. *See* Tex. R. Evid. 404(b). Specifically, Johnson asserts that the State's notice was not specific enough in that it gave only the crime, the year, and the state in which the conviction occurred. But the evidence was offered to rebut the defensive theory of fabrication and retaliation; thus, the advance-notice requirements are not applicable. *See Jaubert v. State*,

18

74 S.W.3d 1, 4 (Tex. Crim. App.), *cert. denied*, 537 U.S. 1005 (2002). Further, the record shows that the State notified Johnson multiple times well in advance of trial that it intended to introduce Johnson's prior convictions. These notices provided the cause number, the offense, the location, the conviction date, and G.M.'s contact information. This argument is not well founded.

Because the extraneous-offense evidence was offered to rebut Johnson's fabrication and retaliation theories and because it was not unduly prejudicial, the trial court did not abuse its discretion by admitting evidence regarding Johnson's 1980 conviction for aggravated sodomy. We overrule Johnson's second issue.

### III. DOUBLE JEOPARDY

In his final issue, Johnson argues that because the crime of indecency with a child by contact, as alleged in count three of the indictment, was subsumed into the crime of aggravated sexual assault of a child, as alleged in count one of the indictment, convictions of both offenses violate double-jeopardy protections. *See* U.S. Const. amend. V; Tex. Code Crim. Proc. Ann. art. 37.09 (West 2006); *Ex parte Herron*, 790 S.W.2d 623, 624 (Tex. Crim. App. 1990) (op. on reh'g). The record shows that the sexual contact proved at trial occurred during and as part of the aggravated sexual assault alleged in count one. As the State concedes, to allow both convictions to stand would violate the constitutional prohibition against double jeopardy. Because the contact alleged in count three was subsumed into the aggravated sexual assault of a child alleged in count one, we sustain Johnson's third issue. *See Maldonado v. State*, 430 S.W.3d 460, 466–67 (Tex.

19

App.—San Antonio 2014, pet. granted). We reverse the trial court's judgment as to count three, set aside Johnson's conviction and punishment for indecency with a child by contact as alleged in count three, and enter a judgment of acquittal on count three. *See Bigon v. State*, 252 S.W.3d 360, 373 (Tex. Crim. App. 2008).

## IV. CONCLUSION

Because the trial court did not abuse its discretion by admitting evidence of Johnson's prior conviction for aggravated sodomy or by excluding evidence of H.H.'s previous sexual behavior and resultant juvenile adjudication, we overrule issues one and two and affirm Johnson's convictions for counts one and two. *See* Tex. R. App. P. 43.2(a). But because the conduct alleged in count three was subsumed into the conduct alleged in count one, we reverse the conviction for count three and enter a judgment of acquittal on that count. *See* Tex. R. App. P. 43.2(c), 43.3.

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

EN BANC

DAUPHINOT, J., filed a dissenting opinion in which MCCOY and MEIER, JJ. join.

PUBLISH

DELIVERED: October 9, 2014

20

# APPENDIX C



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00253-CR

JOE DALE JOHNSON                                                    APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

----------

FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY
TRIAL COURT NO. 48,790-C

----------

## DISSENTING OPINION ON EN BANC RECONSIDERATION

----------

Respectfully, I cannot join the majority in the conclusion that Appellant was not entitled to offer evidence that the complainant had been sexually abusing his younger sister for several years. Appellant's entire defense was an attempt to show that the State was creating the false impression that the complainant was a victim, a child who was emotionally distraught over being victimized and sufficiently innocent to be embarrassed to discuss it. The State wanted to create

the impression with the jury that the complainant was truthful; Appellant wanted to show the jury that the complainant was a liar. Appellant's position throughout the trial, which he has maintained on appeal, was that the State created the false impression that the complainant was innocent in sexual matters.

The complainant was a twelve-year-old boy who was participating in court-ordered counseling for sexually molesting his ten-year-old sister over several years. At trial, Appellant sought to elicit testimony that the complainant had been adjudicated delinquent for sexually molesting his ten-year-old sister and, among other things, was in court-ordered counseling as a result. On appeal, Appellant argues that the excluded evidence (1) was admissible to rebut the false impression the State had left with the jury regarding the primary reason the complainant was in counseling, thereby opening the door for the sexual abuse evidence; (2) impeached the complainant's testimony that his guilt in being the victim of sexual abuse was relieved when he made his outcry; and (3) supported the defense's theory that the complainant had fabricated the abuse allegations against Appellant to get attention and sympathy for himself. In the trial court, Appellant offered the evidence on the basis that under the Sixth Amendment, cross-examination is the fundamental right of a defendant, affecting due process. He argued that the evidence showed the complainant's mental state at the time he made the outcry and what he was in counseling for. Appellant also argued that the complainant's past sexual behavior could be motive or bias for making

2

the outcry, not only for deception, but to get attention, and that the evidence was admissible to show the complainant's knowledge of sexual matters.

In his first issue, Appellant contends that the trial court erred by excluding evidence that the complainant had sexually assaulted his younger sister and that the trial court thereby violated Appellant's rights under the Sixth Amendment and Due Process Clause and rules of evidence 404(B) and 412. Appellant argues that "[t]he evidence that the alleged victim had sexually molested his little sister was admissible because the State left a false impression with the jury during its direct exam of the alleged victim and because it was admissible to show his mental status at the time of his alleged outcry."

During voir dire, the State appropriately inquired about veniremembers' training in dealing with sexual abuse. That inquiry developed into a discussion of children's varying behaviors in response to having been sexually abused, including their reluctance to admit it or to talk about it. The State asked veniremember Glasgow, a teacher, what kind of evidence she might expect to see in a child sexual abuse case. Glasgow responded that direct evidence might not be available but that evidence might be adduced through counseling. The prosecutor continued to discuss the subject with Glasgow, suggesting that the perpetrator might make sure there were no eyewitnesses and suggesting that there might or might not be DNA evidence, video, or a confession.

Veniremember Taylor said that she had spent eleven years working primarily in the children's psychiatric units of two hospitals. The prosecutor

3

asked her to go into detail about her experiences in the children's psychiatric units and to explain how children might react to their abuse. Next, he asked veniremember Humphrey, who also had extensive experience working with youngsters in the mental health field, to compare his experiences with Taylor's.

Veniremember Lerew had a master's degree in counseling and worked with children and adolescents. The prosecutor asked her to explain the behaviors she encountered "after children have been victimized."

The prosecutor also engaged in extensive discussion of intrafamilial sexual abuse, issues of the child's credibility, and the effect of the abuse on the child. Again, the subjects of counseling and a victimized child's difficulty in discussing his or her abuse were introduced during the State's voir dire.

In a pretrial hearing, the trial judge announced that he had reviewed the complainant's juvenile file. He noted that the complainant had been placed on deferred adjudication probation. The trial judge referred to it as "another probationary disposition" and quoted from the documents before him:

> The Court defers its decision on registration requirement until juvenile has completed an approved sex offender treatment as a condition of probation or commitment to the Texas Youth Commission. The Court retains jurisdiction to require or to excuse registration at any time during the treatment program or on successful or unsuccessful completion.

That particular order was entered July 18, 2008. The trial judge said that he would not allow the defense to "get into those matters" because "the outcry

4

was made well before the allegation of charges against the juvenile in a totally unrelated matter."

In his opening statement, the prosecutor asked the jury to "do [their] best to look at this through the—the lens of a 12, 13-year-old boy." And the prosecutor also asked them to look through the lens of a fifty-year-old pervert. Appellant, in his opening statement, responded,

> You're going to see that this witness, this 13, almost 14-year-old witness, is not your regular, normal 13, almost 14-year-old boy. And the D.A. is going to want y'all to base y'all's decision on this witness and potentially send my client to prison for the rest of his life.

The State called the complainant's father, R.H., as its first witness. The State touched on R.H.'s knowledge of the complainant's having "looked at pornography." The defense, on cross-examination, brought out that the complainant had a habit of watching pornography, but, at the same time, R.H. said that he had caught the complainant watching pornography only once and that he did not think the complainant had a problem with pornography. According to his father, the complainant had viewed pornography at least since he was ten years old. R.H. testified that the complainant was being bullied at school, was suffering from depression, had a stressful relationship with his parents, and had been caught shoplifting. R.H. testified that those problems and the pornography issue were the reasons that he and his wife had placed the complainant in counseling, although, when asked if the complainant was in counseling before

5

April 2007, R.H. testified that he could not remember when counseling began. The following exchange occurred before the jury on cross-examination:

> Q. Okay. And so he—you would agree with me that during the fall of 2007, including November of '07—November of 2007, he was dealing with a lot of issues, correct?
>
> A. There were issues, yes.
>
> Q. And he was having emotional difficulties, correct?
>
> A. Yes.

Despite the trial court's pretrial conclusion that the complainant's outcry was made long before his sister's allegations of sexual misconduct against him, the complainant testified outside the presence of the jury that he had sexually abused his younger sister both before and after Appellant's sexual assaults on him. The complainant also testified that his parents put him in counseling because he was sexually abusing his sister and that they did not know of Appellant's alleged sexual offenses against the complainant when the counseling began: "They did not know about sexual abuse with [Appellant], but they knew about sexual abuse of my sister. They had guessed what was happening and they wanted it to stop. . . . And they were trying to find out through the counselor if I had or not." There was also evidence that the complainant received court-ordered counseling as a result of his sexual abuse of his younger sister over several years. Sexual abuse of his sister was one of the things that the complainant was struggling with in November 2007 and that contributed to his emotional difficulties.

6

Outside the presence of the jury, the complainant testified to the sexual abuse of his sister, but in the jury's presence, he testified that Appellant had sexually abused him. He also testified about his use of pornography and stealing. He said that he had watched pornography for a long time. But the complainant also testified that he had gone four months without watching pornography until Appellant influenced him to start watching pornography again. The complainant further testified that he was angry at Appellant because Appellant had let him play with a Nintendo DS that had been donated to the church but then took the DS away from him. Then the complainant testified,

> Q. At some point you made the decision to tell someone about the sexual acts [by Appellant against the complainant]?
>
> A. Yes.
>
> Q. Why did you decide to do that?
>
> A. Because after the DS wasn't allowed to come to the teen group, I was at first pretty angry that I didn't get the DS like I wanted, but then I got to thinking about it and then I thanked Jimmy for not letting us have it. That was the teen leader that didn't allow it to come through. And I told him that I was thankful for it[,] and he said that—why are you glad that that didn't happen? I said, well, let's just say I can't tell you. And he said, well, that sounds a lot like something that happened to me.
>
> Q. And then—and then did you tell him what happened to you?
>
> A. Yes.
>
> Q. Did you tell him everything?
>
> A. Yes.
>
> Q. How did you feel when you told him?

7

A.     I felt better, like a weight off my shoulders . . . .

The State argues that the rules of evidence and the family code prevented impeachment by a juvenile adjudication and that the evidence was not relevant to Appellant's theory of fabrication.  But the Texas Court of Criminal Appeals has set out a hierarchy for situations in which there is a conflict between the caselaw and its rules.  Rule of evidence 101(c) states that in criminal cases,

> [h]ierarchical governance shall be in the following order:    the Constitution of the United States, those federal statutes that control states under the supremacy clause, the Constitution of Texas, the Code of Criminal Procedure and the Penal Code, civil statutes, these rules, and the common law.  Where possible, inconsistency is to be removed by reasonable construction.[1]

The Texas Court of Criminal Appeals addressed the appropriate balancing of interests between rule of evidence 403 and a defendant's right to confront and cross-examine his accuser and to present his defense in a sexual assault case in *Hammer v. State*:

> Trials involving sexual assault may raise particular evidentiary and constitutional concerns because the credibility of both the complainant and defendant is a central, often dispositive, issue. Sexual assault cases are frequently "he said, she said" trials in which the jury must reach a unanimous verdict based solely upon two diametrically different versions of an event, unaided by any physical, scientific, or other corroborative evidence.  Thus, the Rules of Evidence, especially Rule 403, should be used sparingly to exclude relevant, otherwise admissible evidence that might bear upon the credibility of either the defendant or complainant in such "he said, she said" cases.  And Texas law, as well as the federal constitution, requires great latitude when the evidence deals with a

---

[1]Tex. R. Evid. 101(c).

8

witness's specific bias, motive, or interest to testify in a particular fashion.[2]

The *Hammer* court concluded that "the constitution is offended if the state evidentiary rule would prohibit [a defendant] from cross-examining a witness concerning possible motives, bias, and prejudice to such an extent that he could not present a vital defensive theory."[3]

Similarly, rule of evidence 609(d) states,

Evidence of juvenile adjudications is not admissible . . . under this rule *unless required to be admitted by the Constitution of the United States or Texas.*[4]

That is, while rule 609(d) explicitly prevents the use of evidence of juvenile adjudications, that same rule likewise explicitly bows to the supremacy of the federal and state constitutions.[5]  When an appellant can show a logical connection between a witness's testimony and evidence of his juvenile record demonstrating bias and motive, then excluding such evidence violates the appellant's rights to confront and cross-examine the witnesses against him.[6]

---

[2]296 S.W.3d 555, 561–62 (Tex. Crim. App. 2009) (footnotes omitted).

[3]*Id.* at 562–63.

[4]Tex. R. Evid. 609(d) (emphasis added).

[5]*Id.*; *Irby v. State*, 327 S.W.3d 138, 147 (Tex. Crim. App. 2010), *cert. denied*, 131 S. Ct. 904 (2011).

[6]*See Davis v. Alaska*, 415 U.S. 308, 316–19, 94 S. Ct. 1105, 1110–12 (1974); *Irby*, 327 S.W.3d at 140.

The majority states that because Appellant elicited R.H.'s testimony regarding who initiated counseling and why, Appellant was not allowed to impeach him, despite the complainant's testimony directly contradicting R.H. Although the court order placing the complainant in counseling was entered after the date he began counseling, that does not mean that counseling was not initiated, at least in part, because the complainant was sexually abusing his sister, as he himself testified outside the presence of the jury. Was it because someone was already investigating the abuse of the sister? Was it because the case against the complainant had already been filed? The complainant himself testified that his parents "knew about sexual abuse of [his] sister. They had guessed what was happening and they wanted it to stop. . . . *And they were trying to find out through the counselor if [the complainant] had or not.*" [Emphasis added.] There is a big difference between the complainant's having been in counseling because of tensions with his parents, bullying, and depression and counseling because he had been sexually abusing his sister for years and his parents wanted it to stop. When Appellant was not allowed to correct the false impression left by the testimony of the complainant's father, he was denied due process.

In presenting its case and in jury argument in the trial court, the State repeatedly referred to the reluctance of a boy the complainant's age to admit to the sexual acts that he claimed Appellant committed against him, essentially natural shyness to speak of sexual matters. Further, the State repeatedly spoke

10

of the grooming that would cause an innocent young man to become the victim of a sexual predator. The prosecutor began the State's rebuttal final argument by reminding the jury that he had told them during opening statement that "this case is about a deviant man who took sexual advantage of a young boy . . . [,] how [Appellant] took sexual advantage of [the complainant] for [Appellant's] own pleasure and . . . manipulated [the complainant,] . . . and these are the aftereffects that you've heard about this week." Final argument continued in this vein until the very end.

The State left the impression with the jury that the complainant's emotional problems, watching pornography, conflict with his parents, and need for counseling all arose as a result of his victimization by school bullies and by Appellant, who caused him to participate in sexual activities. This was a false impression that Appellant was entitled to rebut[7] as part of his fundamental due process right to confront and cross-examine witnesses against him in challenging the State's case.[8]

---

[7]*See Renteria v. State*, 206 S.W.3d 689, 697–98 (Tex. Crim. App. 2006) (holding that exclusion of evidence showing the defendant's remorse violated due process by preventing defendant from rebutting the State's case when the State left jury with false impression and emphasized it).

[8]*See Holmes v. South Carolina*, 547 U.S. 319, 324, 126 S. Ct. 1727, 1731 (2006) ("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." (quoting *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 2146 (1986)) (internal quotations and citations

The United States Supreme Court said in *Pointer v. Texas*,

> There are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal. Indeed, we have expressly declared that to deprive an accused of the right to cross-examine the witnesses against him is a denial of the Fourteenth Amendment's guarantee of due process of law.[9]

Appellant was entitled to present his defense. As a fundamental right, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense. The complainant had already been adjudicated delinquent for sexually assaulting his younger sister. He was not particularly remorseful for that conduct, and his actions resulted in strained relations with his parents and the need for counseling. When Appellant tried to inform the jury that the trial court had ordered counseling as a condition of the complainant's probation, he was not allowed to do so. Nor was Appellant allowed to show that the parents had sought counseling for the complainant because he was sexually abusing his sister, as the complainant testified outside the jury's presence, and they wanted

---

omitted)); *see also California v. Trombetta*, 467 U.S. 479, 486 n.6, 104 S. Ct. 2528, 2532 n.6 (1984) ("In related cases arising under the Sixth and Fourteenth Amendments, we have recognized that criminal defendants are entitled to call witnesses on their own behalf and to cross-examine witnesses who have testified on the government's behalf.") (citations omitted); *Holmes v. State*, 323 S.W.3d 163, 173 (Tex. Crim. App. 2009) (op. on reh'g) ("[T]he trial court's ruling disallowing cross-examination of the State's expert witness violated the defendant's fundamental rights to a fair trial.").

[9]380 U.S. 400, 405, 85 S. Ct. 1065, 1068 (1965).

the sexual abuse to stop. But the complainant and his father were allowed to suggest to the jury that the complainant had needed and undergone counseling solely because he had been victimized by bullies and by Appellant, ignoring the admitted years of sexual abuse by the complainant against his younger sister before the alleged sexual abuse by Appellant occurred.

The complainant was mad at Appellant, and, having been adjudicated delinquent for sexually assaulting his younger sister, he knew firsthand or should have known how damning and indefensible an accusation of sexual assault could be. Appellant was entitled to correct the misleading characterization of the complainant that the State had presented to the jury, or, at a minimum, to present to the jury his version of the story and allow the jury, as the trier of fact, to determine what the true facts were. But the trial court impermissibly limited Appellant's right to cross-examine both the complainant and other witnesses against Appellant and to present evidence. Consequently, I would hold that the trial court abused its discretion by not allowing Appellant to cross-examine the complainant and other adverse witnesses with evidence of the complainant's prior sexual victimization of his little sister.

Rule of appellate procedure 44.2(a) provides that "[i]f the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not

contribute to the conviction or punishment."[10]  Appellant was not allowed to present his defense to the jury in any sense other than argument and innuendo. He was not allowed to offer substantive evidence to rebut the picture of the complainant painted by the State and to explain the bases of Appellant's assertion that the complainant was not the shy innocent who was devastated by sexual abuse requiring counseling to repair the emotional damage.  No scientific evidence, no witness, no physical evidence, and no admission otherwise supported the complainant's allegations.  It was simply a swearing match.  I cannot say beyond a reasonable doubt that the error did not contribute to Appellant's convictions or punishment on the two remaining counts; I would therefore hold this error harmful.

The State's questioning of the complainant and his father painted an incomplete and misleading picture of the complainant and the circumstances of his outcry.  By developing the testimony as it did, the State opened the door to evidence that could have accurately conveyed why the complainant was in counseling, what motivation he may have had to make up a false accusation against Appellant, and the degree to which he understood sexual matters and to which he personally appreciated legal consequences imposed upon sex offenders.

---

[10]Tex. R. App. P. 44.2(a).

It is not my position that this court should signal a green light for Appellant to explore in detail the complainant's sexual exploits or for other litigants in similar cases to explore in detail the sexual history of the complainants in those cases. It is the fact that, and the manner in which, the State created a false impression that opened the door to rebut the false picture of the complainant in this case. The jury, not the judge, was the trier of fact, and the jury was entitled to hear Appellant's defense.

Because they did not, I must respectfully dissent.

/s/ Lee Ann Dauphinot

LEE ANN DAUPHINOT
JUSTICE

MEIER and MCCOY, JJ join.

PUBLISH

DELIVERED: October 9, 2014

15